USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 3/31/2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN ALEXANDER aka/ ALEX MARTIN

- against -

KEITH RUPERT MURDOCH; NEWS CORPORATION, INC., DISNEY ENTERPRISES, INC. (THE WALT DISNEY COMPANY, INC.); FOX ENTERTAINMENT GROUP, INC.; AMERICAN BROADCASTING COMPANIES, INC. (ABC) & AFFILIATES; STEVEN LEVITAN; CHRISTOPHER LLOYD; PICTURE DAY PRODUCTIONS, INC.; LEVITAN AND LLOYD PRODUCTIONS, INC.; CBS BROADCASTING, INC.; APPLE, INC.; HULU, LLC.; AMAZON.COM, INC.; BLOCKBUSTER, INC.; IMDB.COM; BRITISH SKY BROADCASTING GROUP, PLC; RTL GROUP; SKY ITALIA; AND FOXTEL

10 Civ. 5613 (PAC) (JCF)

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF AFFIRMATION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**..........................................................................................................i

**PRELIMINARY STATEMENT**.................................................................................................1

**FACTUAL BACKGROUND**.......................................................................................................2

    I.     THE WORKS AT ISSUE..........................................................................................2

          A.    Loony Ben.......................................................................................................2

          B.    Modern Family...............................................................................................4

    II.    THE DEFENDANTS' INVOLVEMENT IN MODERN FAMILY.............................5

**ARGUMENT**...............................................................................................................................6

I.    THE AMENDED COMPLAINT STATES A CAUSE OF ACTION AND A CLAIM FOR RELIEF
    THEREFORE DEFENDANTS' MOTION FOR DISMISSAL MUST BE DENIED...............................6

          A.    THE AMENDED COMPLAINT STATES A CLAIM FOR COPYRIGHT
              INFRINGEMENT........................................................................................................6

              1.    WHETHER MODERN FAMILY IS SUBSTANTIALLY SIMILAR TO LOONY
                   BEN IS A GENUINE ISSUE OF MATERIAL FACT ON WHICH REASONABLE
                   MINDS COULD DIFFER, THEREFORE DEFENDANTS' MOTION MUST BE
                   DENIED.............................................................................................................8

                   a.    PLOT ELEMENTS, CONSIDERED WITH OTHER ELEMENTS IN
                        "MODERN FAMILY" AS A WHOLE, CREATE A FUNDAMENTAL
                        ESSENCE OR STRUCTURE AND TOTAL CONCEPT OR FEEL
                        SUBSTANTIALLY SIMILAR TO THAT OF "LOONY BEN".......................13

                       i.    THE PREMISE OF "MODERN FAMILY" IS SIMILAR TO THAT OF
                            "LOONY BEN" AND INDICATIVE OF SUBSTANTIAL
                            SIMILARITY......................................................................................14

                       ii.    THE DIALOGUE, JOKES AND GAGS OF "MODERN FAMILY"
                           ARE SIMILAR TO THOSE OF "LOONY BEN" AND INDICATIVE
                            OF SUBSTANTIAL SIMILARITY.......................................................15

                       iii.    "LOONY BEN['S]" PLOT ELEMENTS APPEAR IN EPISODES OF
                            "MODERN FAMILY"............................................................................16

iv.    DEFENDANTS STOLE NOT ONLY PLAINTIFF'S IDEAS, BUT THE EXPRESSION OF THOSE IDEAS AS WELL.......................................16

b.    STANDARD FOR COPYRIGHT PROTECTION IN INDIVIDUAL CHARACTERS IS HIGH, BUT SIMILARITIES BETWEEN CHARACTERS MAY GIVE RISE TO PROTECTION IN THE CHARACTERS THEMSELVES; AND, NEVERTHELESS, CONSIDERED WITH OTHER ELEMENTS TAKEN AS A WHOLE, CREATE A FUNDAMENTAL ESSENCE OR STRUCTURE AND TOTAL CONCEPT AND FEEL IN "MODERN FAMILY" THAT IS SUBSTANTIALLY SIMILAR TO "LOONY BEN" ...............................................................................................17

i.    SOME OF THE "LOONY BEN" CHARACTERS MIGHT QUALIFY FOR INDIVIDUAL CHARACTER COPYRIGHT PROTECTION....................................................................................17

ii.    SIMILARITIES BETWEEN "LOONY BEN" AND "MODERN FAMILY" MAY GIVE RISE TO INDIVIDUAL PROTECTION IN THE CHARACTERS THEMSELVES, BUT AT THE VERY LEAST THE SIMILAR CHARACTERS IN "MODERN FAMILY" GO VERY FAR IN CREATING A DERIVATIVE WORK WHICH REPLICATES THE SUBSTANTIALLY SIMILAR FUNDAMENTAL ESSENCE OR STRUCTURE, AND TOTAL CONCEPT OR FEEL OF "LOONY BEN"...................................................................................................17

(A)    Ben And Phil............................................................18

(B)    Rosa And Gloria........................................................21

(C)    Jesus And Manny.......................................................24

(D)    Ben's Daughter And Lily.............................................25

(E)    Herb/Marv And Mitchell/Cameron.............................................26

(F)    Dr. Schwartz And The Dutch Filmmaker...................................27

iii.    DEFENDANTS' DIMINIMIS CHANGES WERE NOT SIGNIFICANT ENOUGH TO AVOID DUPLICATING "LOONY BEN['S]" CHARACTERS, FUNDAMENTAL ESSENCE OR STRUCTURE, AND TOTAL CONCEPT AND FEEL AND, THEREFORE, ONLY SERVE TO PROVIDE FURTHER EVIDENCE OF COPYTHEFT.....28

iv.    "LOONY BEN" AND "MODERN FAMILY" BOTH INCLUDE CHARACTERS WHO AREN'T FAMILY MEMBERS........................28

c.    THE SETTINGS AND PACE ARE SUBSTANTIALLY SIMILAR........................................................................................29

ii

            d.      THE TOTAL CONCEPT AND FEEL OF THE WORKS IS SUBSTANTIALLY SIMILAR..................................................................................................29

                 i.      "LOONY BEN" AND "MODERN FAMILY" BOTH HAVE LARGE ENSEMBLE CASTS..............................................................................................29

                 ii.     "LOONY BEN" AND "MODERN FAMILY" HAVE SIMILAR FORMATS/STRUCTURAL ELEMENTS......................................................................................30

                 iii.    "LOONY BEN" AND "MODERN FAMILY" HAVE SUBSTANTIALLY SIMILAR TONES, MESSAGE , MORAL, TOTAL CONCEPT AND FEEL...........................................................................................30

B.     PLAINTIFF HAS STATED A VALID CLAIM FOR CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT.....................................................................................32

C.     PLAINTIFF HAS STATED A VALID CLAIM FOR IDEA MISAPPROPRIATION...............................................................................................32

       1.     Plaintiff's Idea Misappropriation Claims Are Not Preempted.........................................32

       2.     Plaintiff Has Adequately Alleged Misappropriation.......................................................33

            a.     Plaintiff's Story Idea For "Loony Ben," which Provided The Inspiration For Defendants' "Modern Family" The Requisite Degree Of Novelty Sufficient To Support A Claim Of Idea Misappropriation ..................................33

            b.     A Legal Relationship Existed Between The Parties................... .........................33

            c.     The Defendants Misappropriated And Used Plaintiff's Ideas.................................................................................................36

D.     PLAINTIFF HAS STATED A CLAIM FOR LIBEL PER QUOD AND SLANDER.............................................................................................................36

E.     PLAINTIFF HAS STATED A CLAIM FOR DISREGARDING THE CORPORATE FORM...................................................................................................................37

       1.     Plaintiff Has Stated A Claim That The Corporate Form Of News Corporation And Disney Should Be Disregarded........................................................................................38

2.  Plaintiff Has Alleged Sufficient Facts To Hold Defendant Murdoch Liable..............................................................................................................................38

3.  Plaintiff Has Alleged Sufficient Facts To Disregard The Corporate Veil As To Defendants Levitan and Lloyd.......................................................................................39

II  PLAINTIFF HAS INCLUDED ENOUGH INFORMATION IN THE COMPLAINT TO DEFEAT A PRE-DISCOVERY MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.......................................39

CONCLUSION...................................................................................................................................................39

iv

## TABLE OF AUTHORITIES

**Cases**

Adickes v. S.H. Kress & Company, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142(1970) 30........7

Allen v. Scholastic Inc.,739 F.Supp.2d 642, 2010 Copr.L.Dec. P 30,030, 97 U.S.P.Q.2d 1335, S.D.N.Y., January 06, 2011 (NO. 10 CIV 5335 SAS) ......................................................................3

Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 at 1446 (9th Cir 1994)....................31, 33

Arica Institute, Inc. v. Palmer, 970 F.2d 1067 at 1073 (2d Cir.1992).............................................9

Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946)..............................................................................9

Ashcroft v. Iqbal, 550 U.S. 556 (2007), 129 S. Ct.1937 at 1950 (2009) .....................................3, 8

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).....................................................................6

Bernstein v. U.S. Dep't of State, 922 F. Supp. 1426, 1433 (N.D. Cal 1996)................................. 6

Boisson v. Banian, Ltd., 273 F.3d 262, 272-73 (2d Cir.2001) .......................................9, 10, 16, 29

Broadvision Inc. v. General Electric Co., No.08 Civ. 1478, 2009 WL 1392059...........................34

Broughel I, 2009 WL 928280, (S.D.N.Y. May 5, 2009)................................................................36

Bulger v. Doulton, 2006 WL 3771016 (S.D.N.Y.).................................................................34, 35

Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). ...............................................................7, 38

Castle Rock Entertainment v. Carol Publishing Group, 150 F3d 132, 137 (2nd Cir. 1998);............................................................................8, 9, 10, 11, 12, 17, 18

Comptone Company Ltd. v. Rayex Corp., 251 F.2d 487 at 488 (2d Cir.1958) ...................... 9, 11

Daly v. Palmer, 6 F. Cas. 1132 (C.C.S.D.N.Y.1868) (No. 3552)................................13, 15, 16, 25

Desny v. Wilder, 46 Cal 2d 715, at 731, 299 P.2nd 257 at 265 (1956)..........................................32

ePlus Group, Inc., v. Panoramic Communications, LLC, No. 02 Civ. 7992, 2003 WL, 21512229, (S.D.N.Y. July 2, 2003)...............................................................................................................38

Feist, 499 U.S. at 358....................................................................................................................33

Freeplay Music, Inc., v. Cox Radio, Inc., 409 F.Supp.2d 259 (2005)......................................36, 40

Herzog v Castlerock Entertainment, 193 F.3d 1241 (11th Cir. 1999)............................................7

Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir.), cert. denied, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980)............................................................................1, 7, 8, 39, 40

Hogan v. DC Comics, 48 F. Supp. 2 298 at 309-10 (S.D.N.Y. 1999)....................................17, 26

Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021 at 1022 (2d Cir.1966)...........................................9

Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996 at 1003 (2d Cir.1995)......................................9, 10

Laureyssens v. Idea Group, Inc., 964 F.2d 131 at 139-40 (2d Cir. 1992) ........................................8

Marci v. Mayer, 201 N.Y.S.2d 525 (N.Y. Sup. Ct. 1960), .............................................................37

Metcalf, 294 F.3d at 1074.................................................................................................................33

Micro Star v. Formgen Inc.154 F.3d 1107.......................................................................................10

Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 at 489 (2d Cir.1960)........7, 8, 9, 12

Reed Elsevier v. Muchnick..................................................................................................................2

Ringold v. Black Entertainment T.V. 126 F.3d 70 (2d Cir, 1997).................................................11

Rogers v. Koons, 960 F. 2d 301, 113 S.Ct. 365, 506 US 934, 121 L. ed. 2d 278.............10, 11, 25, 26, 28

Sharratt v. Hickey, 799 N.Y.S. 2d 299, 735-736 3d Dept. 2005 ...................................................37

Sheldon Abend Revocable Trust v. Spielberg, No. 08 Civ. 7810, 2010 WL 3701343, at (S.D.N.Y. September 21, 2010). ....................................................................................................................13

Sheldon v. Metro-Goldwyn Pictures Corporation, 309 U,S. 390 (1940)...........................13, 15, 25

Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir 1977)......................................................................................................................25, 26, 27, 28

Silverman, 35 AD3d at 20-21 .........................................................................................................36

Smith v. Weinstein, 578 F. Supp 1297 at 1303 (S.D.N.Y. 1984)....................................................21

Stromback v. New Line Cinema,384 F.3d 283, Fed. Sec. L. Rep. P 28,878, 72 U.S.P.Q.2d 1545, 2004 Fed.App. 0314P, C.A.6 (Mich.), September 14, 2004 (NO. 02-2388, 02-2387)17...............3, 15, 16, 29

TMTV, Corp. v. Mass Productions, Inc.,345 F.Supp.2d 196, 2004 Copr.L.Dec. P 28,904, D.Puerto Rico, November 24, 2004 (NO. CIV.00-1338(RLA))....................................................18

Towler v. Sayles, 76 F.2d 579 at 582 (4th Cir, 1992)..........................................................................8

Transgo Inc. v. Ajack Transmission Parts Co. 768 F.2d 1001, 106 S.Ct. 802;..................10, 15, 40

Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 at 134-35 (2d Cir.2003)...........................................................................................................10, 12, 13, 15, 16, 23

Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1329 (9th Cir.1983).......7, 8, 27

Twin Peaks Productions, Inc. v. Publications International, Ltd., 996 F.2d 1366 at 1372 n. 1 (2d Cir.1993); ...........................................................................................................................9, 18

United States v. Hamilton, 583 F.2d 448, 451 (9th Cir 1978) (Kennedy, J.); ............................33

Velez v. Sonny Discos, No 06 Civ. 0615, 2007 WL 120686, at *7 (S.D.N.Y. Jan 16, 2007).........9

Walker v. Time Life Films, Inc., 784 F.2d 44 at 50 (2d Cir. 1986)..............................2, 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 29

Warner Bros. Entertainment Inc. v. RDR Books,575 F.Supp.2d 513, 2008 Copr.L.Dec. P 29,616, 88 U.S.P.Q.2d 1723, S.D.N.Y., September 08, 2008 (NO. 07 CIV. 9667 (RPP))........................18

WDM Planning, Inc. v United Credit Corp., 47 NY2d 50, 53 [1979]. ...................................36, 37

Weitzenkorn v. Lesser, 40 Cal. 2d 778 [97 USPQ 545] (1953)................................................31, 35

Williams, 84 F.3d 581 (2nd Cir. 1996).........................................................................10, 25, 26, 28

Wojtczak v. Safeco Prop. & Cas. Ins. Companies, 669 F. Supp. 2d 305, 315 (W.D.N.Y. 2009)...................................................................................................................................................37

## Statutory Authorities

17 U.S.C.A. § 102(b)..............................................................................................................................3

17 U.S.C. §§ 101, 106(2)......................................................................................................................17

## Treatises

Williston, Contracts (rev. ed. 1936), 6, §3......................................................................................35

Nimmer, § 13.03[A]..........................................................................................................................9, 11

Nimmer, § 13.03[A][1]..........................................................................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN ALEXANDER aka/ ALEX MARTIN

- against -

      **10 Civ. 5613 (PAC) (JCF)**

      **MEMORANDUM OF LAW IN SUPPORT OF**
      **AFFIRMATION IN OPPOSITION TO**
      **DEFENDANTS' MOTION TO DISMISS**

KEITH RUPERT MURDOCH; NEWS CORPORATION,
INC., DISNEY ENTERPRISES, INC. (THE WALT
DISNEY COMPANY, INC.); FOX ENTERTAINMENT
GROUP, INC.; AMERICAN BROADCASTING
COMPANIES, INC. (ABC) & AFFILIATES; STEVEN
LEVITAN; CHRISTOPHER LLOYD; PICTURE DAY
PRODUCTIONS, INC.; LEVITAN AND LLOYD
PRODUCTIONS, INC.; CBS BROADCASTING, INC.;
APPLE, INC.; HULU, LLC.; AMAZON.COM, INC.;
BLOCKBUSTER, INC.; IMDB.COM; BRITISH SKY
BROADCASTING GROUP, PLC; RTL GROUP;
SKY ITALIA; AND FOXTEL

## PRELIMINARY STATEMENT

In a nutshell, this is the paradigmatic case of bigoted, Hollywood producers and avaricious, multi-national, entertainment conglomerates conspiring to steal a brilliant, television situation comedy, ironically, about racial acceptance and social inclusion, from an aspiring Black author. Plaintiff's original, television, situation comedy about a large, non-traditional, dysfunctional, multi-racial, multi-generational, pan-sexual, extended family, residing in present day Los Angeles entitled "Loony Ben" was filed with the United States Copyright Office and The Writer's Guild of America West[1] some three and one-half (3) years before Defendants ever copyrighted their infringing, substantially similar, television situation comedy also about a large, non-traditional, dysfunctional, multi-racial, multi-generational, pan-sexual, extended family, residing in present day Los Angeles entitled "Modern Family" See, Plaintiff's Affirmation P.2 ¶1; *See Also*, Exhibit "C," attached thereto, incorporated by this reference, and hereby made a part, hereof. In fact, even Defendants' alternate title "Modern Family" was lifted straight from the Plaintiff's Revised "Loony Ben" Treatment, filed with the Writer's Guild, in which the exact words **modern family** appear, consecutively *See,* Plaintiff's Affirmation P.2 ¶2.

Despite Defendants' protestations to the contrary, Plaintiff's Amended Complaint is plausible and, therefore, legally and factually sufficient and, therefore, should not be dismissed with or without prejudice. Furthermore, many genuine, issues of triable, material fact exist, and a genuine issue of material fact precludes summary judgment. And furthermost, "...courts have observed that **summary judgment is peculiarly inappropriate in copyright infringement cases** due to their inherent subjectivity *See,* Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir.), cert. denied, 449

1

U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). The Court should, thus, deny Defendants' motion to dismiss Plaintiff's meritorious claim with prejudice, and proceed to trial.

## FACTUAL BACKGROUND

**I      THE WORKS AT ISSUE**

Except for a footnote, omitted from Defendants' discussion of the works at issue is any reference to Plaintiff's Revised "Loony Ben" Treatment, a copy of which is affixed to the Amended Complaint See, Amended Complaint Composite Exhibit "A." Defendants attempt to persuade the Court to ignore the Revised "Loony Ben" Treatment because portions thereof rebut Defendants' claim that the two shows are not substantially similar. In fact, portions of the Revised "Loony Ben" Treatment read like one of the many reviews of "Modern Family," even though Plaintiff wrote the Revised Treatment some three and one-half (3) years before any of the Defendants ever copyrighted "Modern Family."

Contrary to Defendants' assertion, the Revised Treatment did not have to be deposited with the Copyright Office, in order for copyright protection to attach. Copyright protection attaches automatically. In fact, registration isn't even a prerequisite, in order for the courts to exercise subject matter jurisdiction *See,* U. S. Supreme Court decision <u>Reed Elsevier v. Muchnick</u>. Moreover, the first Treatment and Pilot Script were deposited with the Copyright Office. Additionally, nothing must be filed with the Copyright Office, in order to bring a claim for idea misappropriation.

**A.      LOONY BEN**

Defendants claim the works at issue are not substantially similar; but the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" See, <u>Walker v. Time Life Films, Inc.,</u> 784 F.2d 44 at 50 (2d Cir. 1986). Contrary, to Defendants' self-serving, conclusory assertions "Loony Ben" is not a traditional sitcom. Like "Modern Family," the "Loony Ben" show features a very **non-traditional**, multi-racial, pan-sexual extended family residing in Los Angeles *See,* Amended Complaint Composite Exhibit "A" P. 2-8; *See Also,* Bradley Decl. Exhibit 1 P. 2-14. Contrary to Defendants' assertions, the fact that all the "Loony Ben" characters are connected to each other through Ben does not vitiate the fact that, like "Modern Family," "Loony Ben" has a large ensemble cast See, Plaintiff's Affirmation P. 2 ¶3.

Also contrary to Defendants' assertions, originally, "Modern Family" clearly starred Ed O'Neil, as Jay Pritchard *See,* Plaintiff's Affirmation P. 2-3 ¶4. Despite Defendants' repeated assertions to the contrary, "Modern Family" is not a show about three (3) separate households, for as it was revealed at the end of the first episode, like the family in "Loony Ben," they are actually one big family *See,* Plaintiff's Affirmation P. 3 ¶5. Also, in spite of Defendants' unfounded, contrary assertions, like Ben, the characters on "Modern Family" do have mental health issues and are a dysfunctional family *See,* Amended Complaint P. 20-21 ¶95. For instance, the characters on "Modern Family" are described by Haley's boyfriend Dylan as "nutty people" *See,* Plaintiff's Affirmation P. 3 ¶6. Also, like Ben, Phil, the "Modern Family" counterpart to Ben, suffers from psychological problems, such as attention deficit disorder, claustrophobia and other phobias, hypochondria and Peterpanism See, Plaintiff's Affirmation P. 3-4 ¶7. Also, in "Loony Ben," Ben takes a lot of pills See, Plaintiff's Affirmation P. 4 ¶8. In "Modern Family," Phil says he needs pills! See, Amended Complaint P. 26 ¶120. Also,

like Ben, in "Modern Family" Claire suffers from obsessive compulsive disorder See, Plaintiff's Affirmation P. 4 ¶9. And, like Ben, "Modern Family['s]" character Luke believes in Martians; Phil says there's an alien inside me *See,* Amended Complaint P. 41 ¶¶185-186; See Also, season 1 episode 11 "Up All Night." Also, the "Modern Family" characters bear their souls to the camera, creating the same feel of psychotherapy sessions, which are a component of "Loony Ben." And, Manny acts as Claire's psychiatrist *See,* Plaintiff's Affirmation P. 4 ¶10.

As Defendants point out in their Preliminary Statement, none of the loony characters in "Modern Family" have been committed yet; however, Phil, the "Modern Family" counterpart to Ben, is equally as good a candidate, as Ben *See,* Plaintiff's Affirmation P. 4 ¶11. The only real truth in Defendants' Preliminary Statement is that "Modern Family" tells the story of "... tender yet comedic relationships" *See,* Cendali Memorandum P. 2 ¶1 However, this truth only serves to bolster Plaintiff's claims of copyright infringement and idea misappropriation, for this sentimental feel or mood bears Plaintiff's "...stamp of ...originality," not Defendants See, Amended Complaint Composite Exhibit "A" P. 8 ¶2, where **the Revised Treatment concludes,** "Like a layer cake consisting of various layers, Loony Ben includes layers of confusion, dissatisfaction, anger, and disappointment, ***though through it all the characters interrelate with an underlying sense of caring and love;"*** See Also, <u>Stromback v. New Line Cinema,</u>384 F.3d 283, Fed. Sec. L. Rep. P 28,878, 72 U.S.P.Q.2d 1545, 2004 Fed.App. 0314P, C.A.6 (Mich.), September 14, 2004 (NO. 02-2388, 02-2387)17 U.S.C.A. § 102(b). This mood, which constitutes Plaintiff's expression, is wholly lacking in any show Defendants Levitan and Lloyd ever created or even worked on See, Plaintiff's Affirmation P. 4-5 ¶12.

Defendants cite <u>Allen v. Scholastic Inc.,</u>739 F.Supp.2d 642, 2010 Copr.L.Dec. P 30,030, 97 U.S.P.Q.2d 1335, S.D.N.Y., January 06, 2011 (NO. 10 CIV 5335 SAS) and urge this Court to dismiss Plaintiff's meritorious claim just because the justice in <u>Allen</u> dismissed that case, which is distinguishable from the case at bar. But, the <u>Iqbal</u> Court stated that determination of whether a complaint has stated a plausible claim for relief is "a **context-specific task** that requires the reviewing court to draw on **its judicial experience and common sense**" See, <u>Ashcroft v. Iqbal,</u> 550 U.S. 556 (2007), 129 S. Ct.1937 at 1950 (2009).

Contrary to Defendants' assertion, in "Loony Ben," the character Ben does interact with the audience/camera and this structural element helps shape the feel of both shows See, Plaintiff's Affirmation P. 5 ¶13. Contrary to Defendants' self-serving, assertion, the one sentence Logline is not the "summary" of "Loony Ben." Defendants are well aware the summary of "Loony Ben" is the Revised Treatment on file with The Writer's Guild. Perhaps the most presumptuous, egregious, self-serving mischaracterization of "Loony Ben" made repeatedly by Defendants is that the show centers around Ben. This, however is patently, objectively false, for in the Revised Treatment, Plaintiff stated emphatically that his show, **"Loony Ben" centers on the most basic societal institution —the family"**... It will be the first show of its kind to tackle the issue of modern day diversity not only in our society at large, but in a single family unit." See, Plaintiff's Affirmation P. 5 ¶14.

Defendants' memorandum of law unduly focuses on only a few, isolated excerpts from Plaintiff's first Treatment, which have been strategically edited by Defendants, in order to mischaracterize "Loony Ben" and deceive this honorable Court

into believing the works at issue aren't similar. For instance, Defendants conveniently edited out the portion of the sentence where Plaintiff wrote in both Treatments Ben's "... mental-psychological problems which **may not** or may **arise**..." See, Plaintiff's Affirmation P. 5 ¶15. Defendants intentionally omitted that language from their memorandum because they know Plaintiff included it precisely because Plaintiff did not want Ben to be perceived as too crazy. Plaintiff decided that if Ben were too crazy, it simply wouldn't be funny. As both Treatments state, "At times he **may** (or may not) **even be feigning mental illness**" See, Plaintiff's Affirmation P. 5 ¶16. That Plaintiff chose to downplay Ben's mental-psychological problems can also be gleaned from even a cursory read through of the Pilot script, in which Ben does not act extremely crazy See, Plaintiff's Affirmation P. 5 ¶17. Also, in describing some of the mental illnesses which may not appear Plaintiff used the word **"borderline"** to illustrate that Ben is not overly crazy See, Plaintiff's Affirmation P. 5-6 ¶18.

Defendants also deceptively edited out where Plaintiff wrote that Ben, like Phil, the "Modern Family" counterpart to Ben, suffers from attention deficit disorder, claustrophobia, and other phobias as well as Peterpanism, as specified in the both Treatments *See,* Plaintiff's Affirmation P. 6 ¶19. Defendants did inadvertently, however, point out that Ben suffers from obsessive, compulsive disorder, a similar trait he shares, not coincidentally with "Modern Family['s]" character, Claire *See,* Plaintiff's Affirmation P. 6 ¶20.

Also, Defendants deceptively overemphasize part of the Ben character's back story to wit: that when he was a child his parents announced they were gay and Ben was reared by his father, Herb, and Herb's "husband." Overemphasizing Ben's back story, Defendants state Ben struggles with the "effect[s]" of having been reared by gay parents, conveniently without ever mentioning that the resulting effect is **sexually ambiguity** because Defendants categorically refuse to acknowledge that both Ben and Phil, the "Modern Family" counterpart to Ben, are masculine in appearance, manner, and dress, but **sexually ambiguous** and love to strap on aprons and cook See, Plaintiff's Affirmation P. 6 ¶21.

Defendants also falsely claim the Treatments state Ben "... requires ... " involuntarily commitment to a psych ward. As previously mentioned Plaintiff chose to down play Ben's mental problems, so the character would not be perceived as too crazy, that is why **in the Pilot Ben is never committed and no scenes take place in a mental hospital**. Also, the Treatment states "...he **finds himself** being involuntarily committed," but, Plaintiff never said Ben's actions would warrant or "...require..." commitment, that is just a false, self-serving statement on Defendants' part *See,* Plaintiff's Affirmation P. 6 ¶22.

## B   MODERN FAMILY

Falsely Defendants persist in maintaining alleged "creators" Defendants Levitan and Lloyd independently created "Modern Family," but Levitan's own words, revealing him to be an admitted idea thief, belie this claim [*See,* Plaintiff's Affirmation Exhibit "D," wherein Defendant Steven Levitan professes his own personal belief that writers should steal good story ideas from anyone, attached thereto, incorporated by this reference, and hereby made a part, hereof]. Throughout their memorandum of law, redundantly, Defendants rehash arguments attempting to manufacture differences between the works at issue where there are none, and in so doing contradict themselves. For example, first they state

4

"Modern Family" focuses on three households. Then, contradicting themselves, they describe the characters as "one family" See, Cendali Memorandum P. 2 ¶1, P. 4 ¶1. As already mentioned, both shows feature large ensemble casts See, Plaintiff's Affirmation P. 2 ¶3. As previously mentioned, Plaintiff's Revised Treatment states unequivocally that the focus of "Loony Ben" is not just on Ben; but rather, Ben **and** his large, non-traditional, multi-generational, multi-racial, pansexual, dysfunctional family residing in present day Los Angeles *See,* Plaintiff's Affirmation P. 3 ¶5. Similarly, "Modern Family" focuses on Jay and his large, non-traditional, multi-generational, multi-racial, pansexual, dysfunctional family residing in present day Los Angeles. Like the characters in "Modern Family" the "Loony Ben" characters live in different households, but they are nevertheless above all else one family See, Plaintiff's Affirmation P. 3 ¶5. Also as previously mentioned, in "Loony Ben," Ben like the characters in "Modern Family" speaks to the camera/audience See, Plaintiff's Affirmation P. 5 ¶13.

As previously mentioned, "Modern Family" despite Defendants' assertions to the contrary, does, in fact, depict "nutty people" with mental health issues, such as attention deficit disorder, Peterpanism, claustrophobia and obsessive, compulsive disorder (See, Plaintiff's Affirmation P. 3-4 ¶6-7), as well as incorrigible children (See, Plaintiff's Affirmation P. 6-7 ¶23) and two ex-wives characters, Gloria and Dee Dee, (See, Plaintiff's Affirmation P. 7 ¶24) and contrary to what Defendants are trying to mislead the Court to believe, like the characters in "Loony Ben," they all at times have to make an effort to get along and cope with situations and conflicts that arise as a result of their being one large "nutty," non-traditional, multi-generational, multi-racial, pansexual, dysfunctional family residing in present day Los Angeles See, Plaintiff's Affirmation P. 7 ¶25.

Defendants' memorandum of law does at one point concede that in "Modern Family" the "... overarching premise is that despite differences in age, ethnicity, sexual orientation or personality, the characters are, above all else, one family *See,* Cendali Memorandum P. 4 ¶1. But, Defendants fail to mention to the Court that Plaintiff's Revised Treatment, to which Defendants had access, similarly reads, " ... **a multi-racial, multi-ethnic, American family handles cultural differences among it[s] own family members and remains more or less in tact... though through it all the characters interrelate with an underlying sense of humor, caring and love!"** See, Plaintiff's Affirmation P. 8 ¶26.

Defendants use the theme what it means to be a good Dad as an example of a specific theme of a "Modern Family" See, Cendali Memorandum P. 4 ¶1. Similarly, this theme is explored in the "Loony Ben" Pilot as Ben strives and learns how to be a good father to his son; and learns he must be a responsible Dad and keep his promise to plan his son's birthday party See, Plaintiff's Affirmation P. 8 ¶27. Such parallelisms of themes, treatment, plot, incident, setting and characterization between the works at issue illustrate that "Loony Ben" and "Modern Family" are, in fact, substantially similar and have the same mood, fundamental essence or structure, and total concept and feel.

**II    THE DEFENDANTS' ALLEGED INVOLVEMENT IN MODERN FAMILY**

In deciding this motion, the conduct of the Defendants should be scrutinized by the Court, relying on its judicial experience, wisdom and common sense. Defendants' do not begin to list all the factual allegations regarding their conduct set forth in Plaintiff's Amended Complaint. Plaintiff's factual allegations are too numerous to rehash, here, for those

details, *See,* Plaintiff's Affirmation P. 9-10 ¶28; See Also, Plaintiff's Amended Complaint.

## ARGUMENT

**I      THE AMENDED COMPLAINT STATES A CAUSE OF ACTION AND A CLAIM FOR RELIEF, THEREFORE DEFENDANTS' MOTION FOR DISMISSAL MUST BE DENIED**

Defendants memorandum of law consists largely of self-serving, conclusory statements attacking the sufficiency of the Amended Complaint. Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain a "short and plain statement of the claim showing the pleader is entitled to relief." Contrary to Defendants' assertions, Plaintiff has stated a cause of action. Moreover, on a Rule 12 (b) 6 motion, the issue is not supposed to be whether the complaint states a cause of action, but whether the complaint states a **colorable legal claim for relief**. A colorable legal claim is simply one that is **not "wholly insubstantial or frivolous"** *See,*  Bernstein v. U.S. Dep't of State, 922 F. Supp. 1426, 1433 (N.D. Cal 1996). Plaintiff has alleged more than sufficient legal grounds and allegations of harm to satisfy this liberal standard of pleading See, Sutton v. Utah State School for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) **("A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'")**. Plaintiff's 84 page Amended Complaint (not including attachments) is more than sufficient to state a claim for which relief may be granted and put Defendants on notice of the basis of the suit against them.

Attempting to have trial by pleadings and deny Plaintiff's rights to conduct discovery and have a jury trial, Defendants rely heavily on Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a case many believe was wrongly decided. Also, where, as here, a state rule of civil procedure is intimately bound-up with a state right, the federal courts must apply the state rule of procedure. If the Court were to apply Twombly to the instant case, the Court would essentially be applying a federal rule of civil procedure to defeat a pro-se Plaintiff's state claims, in direct conflict with the Supreme Court's sixty-six (66) year old holding in Guaranty Trust Co. v. York, 326 U.S. 99 (1945). Therefore, the Court must necessarily apply the New York state rule of civil procedure, at least with respect to Plaintiff's state claims, which merely requires notice pleading.

However, the Court need not necessarily reach that issue because even under the courts holding in Twombly, Plaintiff's Amended Complaint is still sufficient, for under Twombly, to be legally sufficient, a complaint only has to contain sufficient factual matter, **accepted as true**, which "state[s] a claim to relief that's **plausible on its face**," See, Bell Atlantic Corp. v. Twombly, supra, at 570. A claim has prima facia plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged *See,* Id., at 556. In their misleading memorandum of law, Defendants fail to point out that *"detailed factual allegations are not required"* See, Id., at 555 (2007). At this stage, Plaintiff does not have to prove to the Court that he will ultimately prevail. The ultimate issue of substantial similarity should be determined by the trial jury. Also, it is important to note, Defendants' memorandum attempts to shift the Court's focus from the true issue as defined by the Twombly court. Under Twombly, the issue to be considered by the Court isn't whether Plaintiff states a claim for which relief can be granted, but rather,

6

whether based on the complaint, **the facts being taken as true, considered in a light most favorable to the Plaintiff,** it is ***possible to state a claim*** for which relief may be granted. Thus, even under the stricter standard set forth in Twombly, Plaintiff's Amended Complaint is plausible and legally and factually sufficient; for, contrary to what Defendants would mislead the Court to believe, under Twombly **details are not required and, here, the facts being taken as true, considered in a light most favorable to the Plaintiff,** *state a claim that is plausible*, for which relief may be granted or at the very least make it is ***possible to state a claim*** for which relief may be granted. "Moreover, since Plaintiff is proceeding pro se, the court is required to construe his submissions liberally, 'to raise the strongest arguments that they suggest'" *See,* Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

Moreover, it is inappropriate to treat Defendants' motion as a motion for summary judgment. Summary judgment is appropriate and may be entered only where there is no genuine issue of material fact *See,* Hoehling supra. The moving party bears the burden of meeting this standard *See,* Adickes v. S.H. Kress & Company, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142(1970) 30. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied, notwithstanding that the non-moving party has introduced no evidence, whatsoever. **If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial.** In applying this standard, in assessing whether the movant has met this burden **the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant.** Even where the parties agree on the basic facts, but **disagree about the inferences that should be drawn** from these facts, summary judgment may be inappropriate *See,* Herzog v Castlerock Entertainment, 193 F.3d 1241 (11th Cir. 1999). **If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment** *See,* Id.

In copyright cases, it is especially important for courts to bear in mind the practical difficulty of drawing a bright line between idea and expression, and to recognize that **a genuine issue of material fact precludes summary judgment** *See,* Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 at 489 (2d Cir.1960) (L. Hand, J.), Summary judgment must be denied in copyright infringement suits, where, as in the case at bar, the question of substantial similarity **is one on which reasonable minds could differ** *See,* Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1329 (9th Cir.1983). In addition, **"... courts have observed that summary judgment is peculiarly inappropriate in copyright infringement cases due to their inherent subjectivity."** *See,* Hoehling v. Universal City Studios, Inc., supra.

And, even if Defendants' request is granted, any dismissal should be without prejudice, and Plaintiff should be granted leave to amend. It is well settled that the **federal courts should allow for liberal amendment of pleadings** See, Fed.R.Civ.P 15(a). This is so, particularly where, as here, in the instant case, Plaintiff has not previously requested leave to amend.

### A.    THE AMENDED COMPLAINT STATES A CLAIM FOR COPYRIGHT INFRINGEMENT

For purposes of their motion, Defendants do not contest Plaintiff's ownership of a valid copyright. Once prima facie ownership of a valid copyright has been established, courts have developed a two prong test for determining whether a **prima facie case of infringement** has been met. First "a plaintiff must first show that his work was actually copied . . ." *See,* Castle Rock Entertainment v. Carol Publishing Group, 150 F3d 132, 137 at \*3-6 (2nd Cir. 1998); *See Also,* Laureyssens v. Idea Group, Inc., 964 F.2d 131 at 139-40 (2d Cir. 1992) (quotation marks and citations omitted). Although Defendants do not contest access/copying for purposes of their motion, they, nevertheless, dispute facts alleged in the Amended Complaint, which pertain to access See, Cendali Memorandum P. 6 n. 9; And See, Cendali Memorandum P. 32 ¶¶3-4; consequently, out of an abundance of caution, Plaintiff's discussion of third party intermediaries, access and copying follows below.

Actual copying may be established two ways: by direct, or indirect evidence of copying. Indirect evidence of copying tends to indicate that defendant had **access** to plaintiff's original, copyrighted work. It is unnecessary to prove defendants read plaintiff's original, copyrighted work; plaintiff, rather only need show that defendants had access and **might** have read the original, copyrighted work. In addition, "[a court may infer that the alleged infringer had a reasonable possibility of access, if the author sent the copyrighted work to a **third party intermediary** who has a close relationship with the infringer." *See,* Towler v. Sayles, 76 F.3d 579 at 582 (4th Cir, 1992). Thus, Defendants' argument that the Amended Complaint is factually insufficient because it alleges some of the Defendants had direct access, while others had access via third parties is objectively absurd.

The second prong of the test for determining whether a prima facie case of infringement has been met requires a showing that defendants' copying amounts to an **"improper or unlawful appropriation."** In order for defendants' copying to amount to an "improper or unlawful appropriation," Plaintiff must show **"substantial similarity"** between the original and the infringing work. But, Plaintiff is, however, not required to prove his case at this juncture. At this early stage, Plaintiff need only show, as to the question of substantial similarity, **a genuine issue of material fact exists *on which reasonable minds could differ** See,* Peter Pan Fabrics, Inc., supra..), *See Also,* Twentieth Century-Fox Film Corp. v. MCA, Inc., supra. Defendants cite infringement cases distinguishable from the case at bar then state that they were routinely dismissed, so Plaintiff's case should be dismissed. However, infringement cases must be decided on a case by case basis according to their own merits: whether a complaint has stated a plausible claim for relief is "a **context-specific task** that requires the reviewing court to draw on **its judicial experience and common sense**"); and furthermore, contrary to what Defendants would mislead this Court to believe, actually, "[s]ummary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works. "... **[S]ummary judgment is peculiarly inappropriate in copyright infringement cases** due to their inherent subjectivity" *See,* Ashcroft v. Iqbal, supra.; *See Also,* Hoehling v. Universal City Studios, Inc., supra.

      1.    **WHETHER MODERN FAMILY IS SUBSTANTIALLY SIMILAR TO LOONY BEN IS A GENUINE ISSUE OF MATERIAL FACT ON WHICH REASONABLE MINDS COULD DIFFER, THEREFORE DEFENDANTS' MOTION MUST BE DENIED**

Since Defendants intentionally do not correctly state the recognized legal standards for determining whether two works are substantially similar their memorandum is deliberately misleading, obfuscates the issues is not helpful to the Court in reaching a fair, just determination. Consequently, what follows is a brief summary of the recognized legal standards. The first test, the "fragmented literal similarity" test, focuses upon isolated copying of direct quotations or close paraphrasing *See,* Castle Rock Entertainment v. Carol Publishing Group, 150 F3d 132, 140 at *11 (2d Cir. 1998). But, substantial similarity does not require literally identical copying of every detail. *See,* Comptone Company Ltd. v. Rayex Corp., 251 F.2d 487 at 488 (2d Cir.1958); *See Also,* 4 Nimmer, § 13.03[A]. Thus, the Copyright Act must necessarily protect against more than literal, verbatim, word for word copying. To that end, courts have recognized other tests exist to assist in determining whether two works are, in fact, substantially similar.

For instance, the second test, the **"comprehensive non-literal similarity test"** or **"fundamental essence or structure test,"** examines *whether the fundamental essence or structure of one work is duplicated in another See,* Castle Rock Entertainment v. Carol Publishing Group, 150 F3d 132, 140 at *11 (2d Cir. 1998). The comprehensive nonliteral similarity test refers to an alleged copy that is qualitatively but not exactly similar to a copyrighted work, *See,* 4 Nimmer, § 13.03[A][1]; *See Also,* Twin Peaks Productions, Inc. v. Publications International, Ltd., 996 F.2d 1366 at 1372 n. 1 (2d Cir.1993); *See Also,* Arica Institute, Inc. v. Palmer, 970 F.2d 1067 at 1073 (2d Cir.1992). Whether the fundamental essence or structure of two works are substantially similar, is a **mixed question of law and fact,** which **should be decided by a jury.**

The third test, misstated in Defendants' memorandum of law, is the **"ordinary observer test,"** where the inquiry is **"whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work"** *See,* Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021 at 1022 (2d Cir.1966); or, stated more accurately, **whether "the ordinary observer, <u>unless he set out to detect the disparities, would be disposed to overlook</u> them, and regard their aesthetic appeal as the same."** *See,* Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 at 489 (2d Cir.1960). Contrary to what Defendants would mislead the Court to believe, since this test focuses on the response of the ordinary observer, dissection is irrelevant *See,* Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946). Whether two works are substantially similar, as **judged by the ordinary, reasonable person,** is a **mixed question of law and fact,** which **should be decided by a jury.**

Defendants actually partially state the "more discerning ordinary observer test," citing Velez v. Sonny Discos, No 06 Civ. 0615, 2007 WL 120686, at *7 (S.D.N.Y. Jan 16, 2007). But fail to cite Boisson v. Banian, Ltd., 273 F.3d 262, 272-73 (2d Cir.2001) where the court explained, it expressly cabined the broad application of this standard in Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996 at 1003 (2d Cir.1995). This test is only supposed to be used "[u]nder certain circumstances, **when the works at issue contain considerable elements from the public domain** that are unprotectible by copyright, the usual 'ordinary observer' test becomes 'more discerning,'" See, Velez v. Sonny Discos, No 06 Civ. 0615, 2007 WL 120686, at *7 (S.D.N.Y. Jan 16, 2007). Thus, the more discerning test is inapplicable to original, artistic works, as in the

9

instant case, so this Court should not apply it.

Furthermore, not only do Defendants misstate the ordinary observer test, they also misstate the more discerning observer test, for even in instances where the more discerning test is applicable, the court emphasized in its decisions subsequent to <u>Knitwaves</u>, that contrary to what Defendants would deliberately mislead this honorable Court to believe, **"[i]n applying this test, a court is not to dissect the works at issue into separate components and compare only the copyrightable elements..."** *See,* <u>Boisson v. Banian, Ltd.</u>, supra. because such "a scattershot approach cannot support..." [or negate] "...a finding of substantial similarity because it fails to address the underlying issue whether a lay observer would consider the works as a whole substantially similar to one another" *See,* <u>Boisson v. Banian Ltd.</u>, quoting <u>Williams,</u> 84 F.3d at 590. Moreover, a court is not to dissect the works at issue into separate components and compare only the copyrightable elements..." because **"[t]o do so would be to take the 'more discerning' test to an extreme, which would result in almost nothing being copyrightable...,"** *See,* <u>Boisson v. Banian Ltd</u>. This is so because defendants often infringe a copyright not only by literally copying a portion of a work, but also by **"parroting properties** that are **apparent *only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another"** *See,* <u>Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc.</u>, 338 F.3d 127 at 134-35 (2d Cir.2003).

The fourth test is the **total concept and feel test,** under which "[s]imilarity of expression focuses on ***the response of the ordinary reasonable person*** and considers the ***total concept and feel"*** of the two works See, <u>Micro Star v. Formgen Inc.</u>154 F.3d 1107. Under the total concept and feel test, courts analyze the similarities between the original and the allegedly infringing work, in such aspects as theme, characters, plot, pace, setting and total concept and feel *See,* <u>Castle Rock Entertainment v. Carol Publishing Group</u>, 150 F.3d 132, 140 at *10 (2d Cir. 1998). Whether two works have **substantially similar total concepts or feel**, as **judged by the ordinary, reasonable person**, is a **mixed question of law and fact**, which **should be decided, by a jury**.

At trial, on a full factual and evidentiary record, a jury comprised of ordinary observers will recognize "Loony Ben" as having been taken by Defendants and find the fundamental essence or structure, and total concept and feel of Defendants' infringing television situation comedy about racism, ageism, homophobia and racial acceptance and social inclusion **substantially similar** to Plaintiff's original television situation comedy about racism, ageism, homophobia and racial acceptance and social inclusion, where both shows feature large, diverse, "nutty," non-traditional, dysfunctional, multi-racial, multi-generational, pan-sexual, extended families, residing in Los Angeles, and include layers of "...confusion, dissatisfaction, anger, and disappointment, ***though through it all the characters interrelate with an underlying sense of caring and love"*** and remain "one big ... happy family..." *See,* <u>Transgo Inc. v. Ajack Transmission Parts Co</u>. 768 F.2d 1001, 106 S.Ct. 802; *See Also,* <u>Castle Rock Entertainment v. Carol Publishing Group</u>, 150 F3d 132, 139 at *9-11 (2d Cir. 1998); *See Also,* <u>Rogers v. Koons</u>, 960 F. 2d 301, 113 S.Ct. 365, 506 US 934, 121 L. ed. 2d 278; *See Also,* Plaintiff's Affirmation P. 3 ¶5 , P. 7 ¶25, P.3 ¶5.

At trial, a jury can, applying the ordinary observer test, compare the exaggeratedly humorous, large, "nutty," non-traditional, dysfunctional, multi-racial, multi-generational, pan-sexual, extended family, residing in Los Angeles in "Modern Family" to the exaggeratedly humorous, large, "nutty," non-traditional, dysfunctional, multi-racial, multi-generational, pan-sexual, extended family, residing in Los Angeles in the original work "Loony Ben," and as **ordinary observers** regard the aesthetic appeal of the two works as the same *See,* Castle Rock Entertainment v. Carol Publishing Group, 150 F3d 132, 139 at *9 (2d Cir. 1998); *See Also,* Rogers v. Koons, supra., where court found copyright infringement, similarity was so close that the average lay person would recognize the copying. In their memorandum of law, Defendants' counsel analyze the two works at issue using the exact inapposite test, as lawyers (not ordinary observers) predisposed to find differences (not overlook them) no matter how diminimis or trivial.

Plaintiffs' Amended Complaint list well over sixty (60) similarities between Plaintiff's original work, "Loony Ben" and Defendants' infringing work, "Modern Family." Therefore, in the case at bar, it is plausible that copying is quantitatively and qualitatively sufficient to support a legal finding that infringement or actionable copying has occurred *See,* Ringold v. Black Entertainment T.V. 126 F.3d 70 (2d Cir, 1997). In their analysis, Defendants equate substantial similarity to literal similarity. However, substantial similarity does not require literally identical copying of every detail. See, 4 Nimmer, § 13.03[A]; See Also, Comptone Company Ltd. v. Rayex Corp., 251 F.2d 487 at 488 (2d Cir.1958). Even assuming arguendo Defendants' copying does not rise to the level of literal copying under the literal test, Defendants nevertheless steal liberally from "Loony Ben," so that **the fundamental essence or structure and/or total concept and feel of "Loony Ben" are duplicated in "Modern Family."** For instance, the fundamental essence and structure of each show is predicated upon the lives and antics of substantially similar large, non-traditional, dysfunctional, multi-racial, multi-generational, pan-sexual, extended families, residing in Los Angeles that despite there differences are one big happy, wacky family. Also, the **overall total concept and feel** of both shows is based on loony, wacky, zany, diverse family members who transcend societal prejudices and biases and overcome racism, ageism, weightism and homophobia and in so doing promote Plaintiff's beautifully sentimental, moral and message of racial acceptance and social inclusion. Therefore, in the case at bar, at least under test two and three and four, it is plausible that copying is sufficient to support a legal finding that infringement or actionable copying has occurred *See,* Ringold v. Black Entertainment T.V. 126 F.3d 70 (2d Cir. 1997).

Defendants analysis of the works at issue is fatally flawed due to Defendants' misplaced, over reliance on the "fragmented literal similarity" test. The court warned in Castle Rock Entertainment v. Carol Publishing Group, 150 F.3d 132, 140 at *11 (2d Cir. 1998) that undue focus upon isolated quotations could improperly distract the court from inquiring as to whether substantial similarity exists. The court, therefore, declined to apply the fragmented literal similarity test See, Id. Here, in the case at bar, as in Castle Rock Entertainment v. Carol Publishing Group, *undue focus upon isolated quotations would improperly distract the court from inquiring as to whether substantial similarity exists* between "Loony Ben" and "Modern Family."

Plaintiff's Amended Complaint lists enough similarities between "Modern Family and "Loony Ben," that **it can not be**

said that a reasonable observer could not find the two shows substantially similar under the fundamental essence or structure test, the ordinary observer test, or the total concept and feel test. Knowing Plaintiff will prevail on the merits under test two, Defendants do not want the Court to consider the fundamental essence or structure test at all, so they do not even mention it in their pleadings. Although Defendants state test three, Defendants, fearing Plaintiff will prevail on the merits under test three, deliberately misstate the ordinary observer test. Defendants deliberately do not state that the Court must ask whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *See*, Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 at 489 (2d Cir.1960). Defendants deliberately do not state a court is not to dissect the works at issue into separate components and compare only the copyrightable elements. This is because those who are among the most sophisticated plagiarists, like Hollywood producers, such as Defendants Levitan and Lloyd may infringe a copyright not only by literally copying a portion of a work, but also by "parroting properties that are apparent *only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another*" *See*, Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 at 134-35 (2d Cir.2003). Hence, Defendants intentionally misstate the law, attempting to mislead this honorable Court into misapplying the incorrect legal standard, in hopes of tricking the Court into wrongly dismissing Plaintiff's meritorious claim.

Also, it is important that the Court bear in mind, the list of similarities in Plaintiff's Amended Complaint is not exhaustive. For instance, while it is true as Defendants facetiously point out that Roseanne would not be mistaken for Ed O'Neil, their sarcasm directed at Plaintiff is not helpful to this Court in reaching a correct determination, and this type of literal analysis is exactly what the Castle Rock Entertainment v. Carol Publishing Group court warned about as it merely serves to improperly distract the court from inquiring as to whether substantial, as opposed to literal, similarity exists See, Castle Rock Entertainment v. Carol Publishing Group, 150 F.3d 132, 140 at *11 (2nd Cir. 1998) See Also, Bradley Decl. P. 38 ¶188. And, it surely can not be said that the average lay observer would be mistaken in taking Sophia Vergara for Sophia Vergara. But more to the point, Roseanne does not have to be mistaken for Ed O'Neil because reasonable minds could conclude the Jay Pritchard character in "Modern Family" is copied from or based on the Olie character in "Loony Ben" and that the Jay Pritchard character goes far in duplicating the same fundamental essence or structure or feel found in "Loony Ben." For instance, in "Loony Ben," the character of Olie expresses personal prejudices and biases. For example when she meets Dr. Schwartz, she says:

      **Olie:**   You look too young to be a psychiatrist.

      **Dr. Schwartz:** My parents put me in accelerated programs.

      **Olie:** Oh, ya know, I told Ben to get a Jewish psychiatrist.

      **Dr. Schwartz:** I am Jewish.

      **Olie:** What? Get out!

      **Dr. Schwartz:** No, my mother's family is African American and my father's family are Jewish

12

immigrants from Europe.

(Olie looks un-persuaded)

Listen, I went to high school in Shaker Heights, college at Brandeis, and graduate school at Columbia,
and now I live in Beverly Hills. Could I be more Jewish...?

**Olie:** Well, ya got me there. (Olie raises her beer bottle) Shalom Doc.! (Olie walks over to Ben)

**Ben:** What have you been up to mom?

**Olie:** Oh nothin, just shootin the breeze with Dr. Doogie Sammy Houser Davis, Jr. over here...

Thus, Olie expresses her prejudiced beliefs in racial stereotypes and uses racial humor. Similarly, Jay expresses his
prejudiced beliefs in racial stereotypes and uses racial humor in "Modern Family." For example, in the pilot episode of
"Modern Family" when Jay finds out Mitchell has an Asian daughter, he refers to her as "...a little fortune cookie" and
continues to stereotype others and express his prejudiced beliefs throughout "Modern Family." This and many other
parallelisms of characterization, treatment, plot, themes, and incident, between the works at issue illustrate that "Loony
Ben" and "Modern Family" are, in fact, substantially similar in mood, fundamental essence or structure, and total concept
and feel. *See,* Sheldon v. Metro-Goldwyn Pictures Corporation, 309 U,S. 390 (1940); *See Also,* Daly v. Palmer, 6 F. Cas.
1132 (C.C.S.D.N.Y.1868) (No. 3552). Therefore, while Roseanne would not be mistaken for Ed O'Neil, reasonable minds
could conclude the Jay Pritchard character in "Modern Family" is copied from or based on the Olie character in "Loony
Ben" and that the Jay Pritchard character goes far in duplicating the same fundamental essence or structure or total feel as
in "Loony Ben." A defendant may infringe a copyright not only by literally copying a portion of a work, but also by
"parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art ...
are considered in relation to one another." *See,* Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc., 338
F.3d 127 at 134-35 (2d Cir.2003).

The fundamental essence or structure, and total concept and feel, and overall moral, and message of Loony Ben/Modern
Family that despite differences in age, ethnicity, sexual orientation or personality, underneath the anger, dissatisfaction,
resentment, and dysfunction, the characters are, above all else, one big happy family bound together by an underlying
sense of caring and love constitutes those **"aspects of... [Plaintiff's] ...work, termed 'expression,' that display the
stamp of the [Plaintiff] author's originality"** rather than Defendants' *See,* Plaintiff's Affirmation P. 10-11¶29.

        a.      **PLOT ELEMENTS, CONSIDERED WITH OTHER ELEMENTS IN "MODERN
                    FAMILY" AS A WHOLE, CREATE A FUNDAMENTAL ESSENCE OR
                    STRUCTURE AND TOTAL CONCEPT OR FEEL SUBSTANTIALLY SIMILAR
                    TO THAT OF "LOONY BEN"**

An author's expression of plot is protectable. In their memorandum of law, Defendants cite cases, which are
distinguishable from the case at bar, in support of their assertion that a plot idea is not protectable; however, in
infringement cases, courts should consider whether similar plots taken with other elements as a whole create a
substantially similar fundamental essence or structure or total concept and feel See, Sheldon Abend Revocable Trust v.
Spielberg, No. 08 Civ. 7810, 2010 WL 3701343, at (S.D.N.Y. September 21, 2010). First Defendants argue the plots of

"Modern Family" differ from the plots of "Loony Ben." Then, contradicting themselves, Defendants argue that the shared plot elements between "Modern Family" and "Loony Ben" are just classic scènes à faire See, Plaintiff's Affirmation P.11 ¶30. Defendants' argument that the shared plot elements between "Modern Family" and "Loony Ben" are simply classic scènes à faire is just a self-serving, conclusory statement. In their analysis Defendants never identify what sequence of events naturally flow from what common theme, nor do Defendants identify what incidents, characters, or settings are indispensable or standard in the treatment of what topic? Thus, Defendants never even state which scenes, characters, or plots had to be done or why they had to be done. The burden of proof is on the moving party bringing a Rule 12(b) 6 motion to dismiss or motion for summary judgment and Defendants' self-serving, conclusory argument falls far short of meeting this burden.

i.   THE PREMISE OF "MODERN FAMILY" IS SIMILAR TO THAT OF "LOONY BEN" AND INDICATIVE OF SUBSTANTIAL SIMILARITY

Defendants state "Modern Family" explores how love can keep a family together despite their differences" *See,* Cendali Memorandum P. 10 ¶2. Similarly, Plaintiff's Revised Treatment reads, "a multi-racial, multi-ethnic, American family handles cultural differences among it[s] own family members and remains more or less in tact..., through it all the characters interrelate with an underlying sense of ... love!" See, Plaintiff's Affirmation P. 8 ¶26.

Defendants state that in "Modern Family, "the characters often argue or hurt each other, but by the end of every episode, they learn a lesson about working together, recognizing their shortcomings, and forgiving those of their family members" *See,* Cendali Memorandum P. 10 ¶2. Similarly, Plaintiff's Revised Treatment concludes, "Like a layer cake consisting of various layers, Loony Ben includes layers of confusion, dissatisfaction, anger, and disappointment, though through it all the characters interrelate with an underlying sense of humor, caring and love! *See,* Amended Complaint Composite Exhibit "A" P. 8 ¶2. Such parallelisms of premise as well as themes, treatment, plot, incident, and characterization between the works at issue illustrate that "Loony Ben" and "Modern Family" are, in fact, substantially similar in mood, message, moral, fundamental essence or structure, and total concept and feel.

Defendants persist in lying blatantly, for example, claiming that, "There is no discussion of mental illness, and no domineering boss" *See,* Cendali Memorandum P. 10 ¶2. Despite Defendants false, perjurious, conclusory, self-serving statements, the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" *See Also,* Walker v. Time Life Films, Inc., 784 F.2d 44 at 50 (2d Cir. 1986), and in season 1 episode 17 "Truth Be Told" Mitchell is working on Saturday when his boss tells him he must work on Sunday also. He gives Mitchell an ultimatum to come into work on Sunday or don't bother coming back again. Mitchell quits and later tells Cameron he is not letting people run his life anymore! *See,* season 1 episode 17 "Truth Be Told;" *See Also,* Amended Complaint P. 41 ¶183-184. Yet, Defendants persist in claiming there is no domineering boss. Such parallelisms of characterization, treatment, plot, themes, incident, details and settings between the works at issue illustrate that "Loony Ben" and "Modern Family" are, in fact, substantially similar in premise, mood, fundamental essence or structure, and total concept and feel.

14

Also, although Defendants claim there is no discussion of mental illness in "Modern Family," this is yet another self-serving, conclusory, perjurious statement, but the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" *See,* Walker, supra.*; See Also,* Plaintiff's Affirmation P. 11-12 ¶¶31-32. For further discussion of similarities between Loony Ben/Modern Family's themes *See,* Plaintiff's Affirmation P. 12-13 ¶33.

      ii.     THE DIALOGUE, JOKES AND GAGS OF "MODERN FAMILY" ARE SIMILAR TO
               THOSE OF "LOONY BEN" AND INDICATIVE OF SUBSTANTIAL SIMILARITY

Defendants claim, the only shared dialogue between the two works is a single word; but, that is untrue — the works control contrary descriptions of the works contained in the pleadings *See,* Walker, supra. *See,* Plaintiff's Affirmation P. 13-15 ¶34 for similarities in dialogue. In addition to the writings attached to the Amended Complaint, Plaintiff wrote and circulated another writing around Hollywood, which Plaintiff believes is in the possession of Defendants; dialogue in the "Modern Family" pilot mirrors the language in that writing *See,* Plaintiff's Affirmation P. 15 ¶35. Plaintiff believes given a reasonable opportunity to conduct discovery, Plaintiff will be able to produce a copy of this writing at trial, and Plaintiff should, nevertheless, have the opportunity to present this and other testimony to a jury. "It is the function of the jury, not of this court, to weigh conflicting evidence and judge the credibility of witnesses" *See,* Transgo supra.; *See Also,* Glovatorium, 684 F.2d at 660 (9th Cir.1982).

Moreover, in Sheldon v. Metro-Goldwyn Pictures Corporation, 309 U,S. 390 (1940), Judge Learned Hand, speaking for a unanimous court, found copyright infringement where there was no identifiable language that was actually copied. The district court had dismissed Sheldon's claim that defendant's movie, based partly on a celebrated murder trial in England, had infringed its copyright in a play based upon the same real-life incident. The United States Court of Appeals for the Second Circuit, in reversing, found that **there was substantial similarity in the characters and 'parallelism of incident'** *See,* Sheldon v. Metro-Goldwyn Pictures Corporation, Id. *See Also,* Daly v. Palmer, 6 F. Cas. 1132(C.C.S.D.N.Y.1868) (No. 3552). A defendant may infringe a copyright not only by literally copying a portion of a work, but also by "parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another." *See,* Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134-35 (2d Cir.2003).

Defendants argue that slapstick comedy is an unprotectable scéne á faire, but this is yet another self-serving, conclusory statement that fails to meet Defendants' burden of proof. Slapstick is not a scene, character, incident or setting that flows naturally from any common theme identified by Defendants; rather, slapstick is a style choice of Plaintiff that goes far in creating the fundamental essence or structure and total concept and feel of both works at issue, and is a style choice Defendants never employed in any show they ever created or even worked on until they decided to misappropriate "Loony Ben." Thus, this comedic style choice, which was never in vogue with Levitan and Lloyd and not employed on any or almost any sitcom on television, at the time Defendants decided to copy "Loony Ben," is one of those **"aspects of... [Plaintiff's] ...work, termed 'expression,' that display[s] the stamp of the [Plaintiff] author's originality"** rather

than Defendants' *See, Stromback v. New Line Cinema*, supra. For examples of slapstick found in Loony Ben/Modern Family *See*, Amended Complaint P.17 ¶¶80-81.

> ### iii.   "LOONY BEN['S]" PLOT ELEMENTS APPEAR IN EPISODES OF "MODERN FAMILY"

A boy's birthday party is not protectable; but Plaintiff's unique treatment of a boy who's birthday party is forgotten by his parent, then planned, where a clown is supposed to appear, then things go wrong, in order to depict family dysfunction and convey humor is protectable *See, Daly v. Palmer,* 6 F. Cas. 1132(C.C.S.D.N.Y.1868) (No. 3552), injunction issued against a performance that was not literally similar but which used "the same series of events, to excite, by representation, the same emotions, in the same sequence." See Also, Amended Complaint P. 40 P. 40-43 ¶¶174-204 for other plot similarities.

> ### iv.   DEFENDANTS STOLE NOT ONLY PLAINTIFF'S IDEAS, BUT THE EXPRESSION OF THOSE IDEAS AS WELL

Defendants pretend the birthday party in "Loony Ben" is dissimilar to the birthday party in "Modern Family" to no avail because the works control contrary descriptions of the works contained in the pleadings" See, Walker v. Time Life Films, supra. Defendants claim that Phil and Claire plan a great party "to make up for the fact that his birthday is so close to the holidays" tellingly ignores the fact that they discuss how Luke's birthday gets lost in the holiday shuffle and one year they "...forgot completely" See, Plaintiff's Affirmation. Furthermore, Defendants also neglect to mention that in both "Loony Ben" and "Modern Family" arrangements are made for clowns to appear at the respective boys' birthday parties *See,* Amended Complaint P. 40 ¶174; *See Also,* Cendali Memorandum p. 13 ¶2.

These and many other unusual parallelisms of plot, themes, incident, setting, characterization, and details between the works at issue illustrate that "Loony Ben" and "Modern Family" are, in fact, substantially similar in mood, fundamental essence or structure, and total concept and feel *See,* Amended Complaint P. 40 ¶174. And, furthermore, in this and other infringing episodes, Defendants incorporated telling insults directed toward Plaintiff. But Defendants' insults merely serve to provide further evidence that the plot idea about a clown appearing at a little boy's birthday party constitutes one of those **"aspects of... [Plaintiff's] ...work, termed 'expression,' that display the stamp of the [Plaintiff] author's originality"** rather than Defendants' *See, Stromback v. New Line Cinema,* supra.; *See Also,* Plaintiff's Affirmation P. 15 ¶36. And, Plaintiff submits Defendants' petty insults, taken together with the totality of the other facts and circumstances, can be considered by an enlightened jury as evidence tending to indicate that Defendants would not and did not independently create an episode about a clown performing at a child's birthday party and, from that, conclude Defendants did not independently create the "Modern Family" series.

Defendants dissect the works using the fragmented literal similarity test, attempting to trick the Court into unduly focusing on isolated copying of direct quotations, in hopes the Court overlooks the parallelisms of plot, themes, incident, setting and characterization, which constitute infringement, not by literal copying, but by **parroting properties** that are **apparent *only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another***" See, Tufenkian Import, supra.; *See Also,* Boisson, supra at 272-73 (2d Cir.2001); *See Also,* Weitzenkorn

*v.* Lesser, 40 Cal. 2d 778 [97 USPQ 545] (1953).

In addition, despite their protestations to the contrary, in tacit recognition that, like the family in "Loony Ben," the family in "Modern Family is dysfunctional, Defendants make the false, self-serving, conclusory statement that "none of the supposed dysfunctions expressed in "Modern Family" appear in "Loony Ben." But, actually indicia of the same family dysfunction do, in fact, appear in both shows — and the works control contrary descriptions of the works contained in the pleadings" *See,* Walker, supra ;See Also, Plaintiff's Affirmation 15-16 ¶37.

Moreover, these and many other parallelisms of themes, plot,  incident, and characterization between the works at issue illustrate that "Loony Ben" and "Modern Family" are, in fact, substantially similar in mood, fundamental essence or structure, and total concept and feel.

Attempting to manufacture dissimilarity, Defendants state in the pilot, Ben never complains about how his daughter is dressed; but, all too conveniently, fail to mention both Treatments clearly state "Ben also wishes he could make his daughter stop dressing like Brittany Spears..." — and, the works themselves control contrary descriptions of the works contained in the pleadings" *See,* Id.*; See Also,* Composite Exhibit "A" P. 2, P. 7 ¶4, P. 8 ¶1.

    **b.**    **STANDARD FOR COPYRIGHT PROTECTION IN INDIVIDUAL CHARACTERS IS HIGH, BUT SIMILARITIES BETWEEN CHARACTERS MAY GIVE RISE TO PROTECTION IN THE CHARACTERS THEMSELVES; AND, NEVERTHELESS, CONSIDERED WITH OTHER ELEMENTS TAKEN AS A WHOLE, CREATE A FUNDAMENTAL ESSENCE OR STRUCTURE AND TOTAL CONCEPT AND FEEL IN "MODERN FAMILY" THAT IS SUBSTANTIALLY SIMILAR TO "LOONY BEN"**

      **i.**    SOME OF THE "LOONY BEN" CHARACTERS MIGHT QUALIFY FOR INDIVIDUAL CHARACTER COPYRIGHT PROTECTION

When deciding questions of character infringement, courts consider physical and psychological traits **and** the total concept and feel of the character *See,* Hogan v. DC Comics. 48 F. Supp. 2 298 at 309-10 (S.D.N.Y. 1999) (citing Walker II, 784 F.2d at 50) (internal quotations omitted) "In determining whether characters are similar, a court looks at the 'totality of [the characters' attributes and traits as well as the extent to which the defendants' characters capture the **'total concept and feel' of figures in [plaintiff's work]."**

      **ii.**    SIMILARITIES BETWEEN "LOONY BEN" AND "MODERN FAMILY" MAY GIVE RISE TO INDIVIDUAL PROTECTION IN THE CHARACTERS THEMSELVES, BUT AT THE VERY LEAST THE SIMILAR CHARACTERS IN "MODERN FAMILY" GO VERY FAR IN CREATING A DERIVATIVE WORK WHICH REPLICATES THE SUBSTANTIALLY SIMILAR FUNDAMENTAL ESSENCE OR STRUCTURE, AND TOTAL CONCEPT OR FEEL OF "LOONY BEN"

Copyright includes a severable bundle of rights, one of which includes the right to create derivative works *See,* 17 U.S.C. §§ 101, 106(2); *See Also,* Stewart v. Abend,495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184, 58 USLW 4511, 1990 Copr.L.Dec. P 26, 557, 14 U.S.P.Q.2d 1614, U.S.Cal., April 24, 1990 (NO. 88-2102). By definition a derivative work is different from, though based on, an original work *See,* Castle Rock Entertainment, Inc. v. Carol Publishing Group, 150 F.3d 132, 140 (2nd Cir). It is irrefutable that the Copyright Act grants in the original author the *exclusive* right to create

derivative works *See*, Twin Peaks Productions, Inc. v. Publications International, Ltd., 996 F.2d 1366 at 1372 n. 1 (2d Cir.1993). It is also irrefutable that the violation of this exclusive right to create derivative works constitutes copyright infringement *See*, 11. TMTV, Corp. v. Mass Productions, Inc.,345 F.Supp.2d 196, 2004 Copr.L.Dec. P 28,904, D.Puerto Rico, November 24, 2004 (NO. CIV.00-1338(RLA)).

Contrary to what Defendants would mislead the Court to believe, regardless of how an author's original expression is copied, the standard for determining copyright infringement is not whether the original could be recreated from the allegedly infringing copy *See*, Warner Bros. Entertainment Inc. v. RDR Books,575 F.Supp.2d 513, 2008 Copr.L.Dec. P 29,616, 88 U.S.P.Q.2d 1723, **S.D.N.Y.**, September 08, 2008 (NO. 07 CIV. 9667 (RPP)). Defendants' unauthorized "sampling" and rearranging of some elements of "Loony Ben" may prevent a separate finding of character infringement with respect to some characters i.e. Mitchell. But, there are similarities and parallelisms of characterization to be found even in the differences, which are probative of copying, and lead to the resultant duplication of the mood and total concept and feel of "Loony Ben," in "Modern Family;" from which an ordinary lay observer can reasonably infer that "Modern Family" is an unauthorized cut and paste, derivative version of "Loony Ben." *See*, 11. TMTV, Corp. v. Mass Productions, Inc., supra. "...television program sued competing production company, seeking declaration of copyright ownership, and **declaration that subsequent program produced by defendant on different channel was derivative work**. Producer moved for summary judgment. Holdings: The District Court , Acosta , J., **held that: (1) producer was sole owner of copyright in program, and (2) program produced by defendants was infringing as unauthorized derivative work**."

(A)    Ben And Phil

And, Plaintiff submits that a jury consisting of ordinary reasonable lay observers, considering attributes and traits of Ben and Phil and the extent to which Defendants' Phil captures the total concept and feel of Plaintiff's Ben, can find the characters are, indeed, substantially similar. Defendants' self-serving, conclusory statement that Ben and Phil share no similarities except for being fathers is contradicted by the works See, Walker v. Time Life Films, Inc., supra.. Contrary to Defendants self-serving, conclusory, perjurious assertion, both Ben and Phil are sexually ambiguous See, Plaintiff's Affirmation P. 6 ¶2.

Contrary to Defendants' assertion, both characters are middle-aged. Phil is middle-aged *See*, Cendali Memorandum P. 18 ¶1; *See Also*, Bradley Decl. 53-54. When Plaintiff indicated Ben was 30, this was based on the show having a successful run.of five to ten years *See*, Plaintiff's Affirmation P. 16-17 ¶38. Thus, whether Ben is middle-aged remains a disputed fact that should be decided by a jury.

That Ben is supposed to be a dark haired, Jewish male can be gleaned from the fact that Plaintiff envisioned Ben Stiller, named on the proposed cast list filed with the U.S. Copyright Office, in the role *See*, P. 27 ¶124. Plaintiff contends that Tye Burrell, who plays Phil, is a Ben Stiller "type." Defendants concede they are both handsome with dark hair. Defendants do not state whether there is/isn't any resemblance (Defendants merely make the self-serving, conclusory statement that Burrell and Stiller are not similar See, Cendali Memorandum P. 18 ¶2; See Also, Bradley Decl. ¶¶121-122

so this remains disputed fact to be decided by a jury.

Plaintiff maintains that Tye Burrell is Jewish, and is, as casting directors in Hollywood say, "Jewish looking," and has in the past portrayed characters who are clearly supposed to be Jewish; these contentions Defendants tacitly admit by neither admitting nor denying these facts. Defendants claim Phil isn't depicted as Jewish because he is shown celebrating Christmas. (Incidentally, Plaintiff knows people who are Jewish but have Christmas trees and exchange Christmas presents and Plaintiff submits this is not uncommon). However, there are Jewish references made throughout "Modern Family" *See,* Plaintiff's Affirmation P. 34-35 ¶¶ 147-148. These Jewish references coupled with the casting of Jewish and Jewish looking actors contributes to "Modern Family['s"] duplication of "Loony Ben['s]" fundamental essence or structure and total concept and feel. And, whether the characters on "Modern Family" are Jewish has even been an ongoing topic of debate among alleged "creators" Levitan and Lloyd. If Levitan and Lloyd can differ as to whether these characters are Jewish, then reasonable minds can differ as to whether the characters on "Modern Family" are Jewish, so this remains a disputed fact to be decided by a jury.

Both Ben and Phil  suffer from a psychological condition referred to as Peterpanism and never fully grew-up and are as a result, adult children See, Amended Complaint P. 25-26 ¶117-118; See Also, Composite Exhibit "A" P. 8 ¶1. In their memorandum of law, Defendants further confuse the issues by mixing truth with lies. For instance, Defendants correctly point out that Ben is needy and incompetent; however, they incorrectly characterize Phil as not needy and not incompetent, despite the fact that even, Tye Burrell, the actor who portrays Phil has been quoted as saying, "It's conceivable that Phil wouldn't be good at anything!" Defendants maintain Ben is inept, while Phil is competent. But, the works control contrary descriptions of the works contained in the pleadings" See, <u>Walker v. Time Life Films, Inc.,</u> supra.

Contrary to Defendants' false, self-serving, conclusory, perjurious, statements, Phil is, in fact, extremely needy and bungling. For example, Phil tells Claire, "I wish you were my mom." Claire lets Phil beat her in a race because she realizes he needs to win and she has to "... take care of her other child." Phil even needs a hug from Jay and must be reassured that Jay likes Phil, then Phil even needs Jay to elaborate on why he likes Phil (*See,* "Modern Family" season 1 episode 4 "Come Fly With Me"). Phil walks into walls and, like Ben, does prat falls. Both are awkward around women and sexually ambiguous See, Amended Complaint P. 26-27 ¶¶121-122.

Although he is obviously not, Ben perceives himself as being cool, like a rock star, and often impersonates the likes of Mick Jagger *See,* Amended Complaint Composite Exhibit "A" P. 4 ¶2. Phil was a Hall and Oates groupie who followed the duo around the country, and in the pilot Phil says he is cool and then is shown impersonating the singers from High School Musical *See,* Amended Complaint P. 26 ¶118.

Defendants try to make much out of the fact that Ben sees a psychiatrist whom Defendants claim helps Ben struggle with serious mental illness. But, the work speaks for itself and in the pilot episode the only mental illness Dr. Schwartz helps Ben cope with is "jungle fever," which, of course, isn't a real mental health condition at all. (Again, proving Plaintiff decided Ben's mental illnesses are mainly a way to justify Ben's funny and quirky personality and behavior. Despite Defendants' protestations to the contrary, nothing indicates Ben "requires" commitment." This is just an example of

Defense Counsel using word play to manufacture and exaggerate differences. Both Treatments clearly state Ben may at times even be feigning mental-psychological illnesses. Both Treatments state he **"finds himself"** involuntarily committed. But, he clearly does not meet the standards for commitment or "...require..." commitment. Ben is not a danger to himself or others. Plaintiff intended humor to be found in the fact that Ben should no more be committed than many other people, yet he "finds himself" being committed even though other people in his family (and society) who are also unusual are not. In trying to explain away the similarities between "Loony Ben" and "Modern Family" Defendants tacitly recognize that Ben is not overly crazy and contradict themselves when they equate conditions he shares with Phil (and Claire), such as claustophobia, adult attention deficit disorder, hypochondria and obsessive compulsive disorder with normalcy *See,* Cendali Memorandum P. 18 at n. 11.

Like Phil in "Modern Family," Ben (and to a greater extent Ben's son) sometimes speaks in the present-day idiomatic African-American dialect, although they are not African-American and this unique treatment and parallelism of traits, characterization, incident and details affects the total concept and feel of the characters, and the mood, fundamental essence or structure and total concept and feel of both shows *See,* Amended Complaint P.33 ¶¶143-144; See Also, Plaintiff's Affirmation P. 117 ¶39.

Defendants claim no similarities exist between Ben and Phil, then in tacit recognition of these similarities, try to cover themselves by claiming. these are just stock character traits. However, this is just another one of Defendants' self-serving conclusory statements. Defendants do not and can not identify a single stock, prototype character upon which Ben Figiwitz and/or Phil Dunphy are based.

Because there is latent, repressed sexual chemistry between Ben and Rosa, Defendants persist in blatantly lying about the existence of sexual chemistry between their "Modern Family" counterparts Phil and Gloria **See, Plaintiff's Affirmation Exhibit "D;"** *See Also,* Amended Complaint P. 29 ¶¶129-130; See Also, Composite Exhibit "A" P. 6 ¶6, and P. 7 ¶1. While it is true Ben is currently infatuated with Kelly. He still likes Rosa and is friends with her. Kelly has sworn off men and is possibly unattainable as a result. Plaintiff obviously intended to create potential for a triangle. And, despite Defendants' protestations to the contrary there is also a triangle involving Phil, Gloria and Claire, who physically resemble Ben, Rosa and Kelly. These parallelisms of traits, characterization, interplay between characters, incidents and details affects the total concept and feel of the characters, and the mood, fundamental essence or structure, and total concept and feel of both shows. Like Ben, Phil the "Modern Family" counterpart to Ben, suffers from psychological problems *See,* Plaintiff's Affirmation P. 3-4 ¶6-9. Despite Defendants' contentions, Phil's background/upbringing was unusual, his father appears to be as unusual as he is *See,* "Modern Family" season 1 episode 21 "Travels With Scout."

Defendants attempting to manufacture differences make much of their diminimis changes, which are so trivial they merely provide further evidence of Defendants' copying and can not insulate Defendants from liability for creating an infringing, derivative work. For instance, Defendants point to the characters' different occupations, but the success of "Modern Family" does not stem from Defendants' changing Plaintiff's character's occupation from one who repairs houses to one who sells houses *See,* Plaintiff's Affirmation P.17 ¶40. Defendants' tweaking of elements in "Loony Ben"

and use of slightly different, yet similar parallelism of characterization and details merely serves to create differences so trivial they only provide further evidence of Defendants' copying and can not insulate Defendants from liability for creating an infringing, derivative work.

Thus, through parallelism of characterization and parroting of properties from "Loony Ben" Defendants created a substantially similar, infringing, needy, bungling, incompetent, sexually ambiguous, adult-child, father character who has delusions that he is cool — as well as a substantially similar, infringing show. A jury consisting of ordinary reasonable lay observers, considering attributes and traits of both characters and the extent to which Defendants' Phil captures the total concept and feel of Plaintiff's Ben, can find the characters substantially similar; or, at the very least, it can not be said that reasonable minds could not differ as to whether "Modern Family['s]" Phil captures the total concept and feel of Plaintiff's Ben. Therefore, summary judgment/dismissal on this issue is precluded.

(B)     Rosa And Gloria

Defendants claim there are no similarities between Gloria and Rosa and gloss over the most glaring similarity of all, the fact that Plaintiff's Proposed Cast List includes heretofore obscure actress Sophia Vergara, who because of Plaintiff, is now Emmy nominated and world famous for staring in ostensibly the same role in ostensibly the same show Plaintiff created for her to star in. Contrary to Defendants' false, conclusory, self-serving statements, Plaintiff is not attempting to monopolize the idea of Sophia Vergara playing a beautiful Latina mother; rather, it is Plaintiff's invention of a role specifically for Sophia Vergara— in which she portrays a stunningly beautiful, fiery, temperamental, Latina mother living in Los Angeles, who marries into a dysfunctional, multi-generational, multi-racial, pansexual extended family, has a thick accent, and always makes her ex/husband do the right thing where her son is concerned, and is laughed more at than with— which constitutes Plaintiff's particular expression and is therefore protectable. In support of their contention that this striking similarity should be ignored, Defendants cite <u>Smith v. Weinstein</u>, 578 F. Supp 1297 at 1303 (S.D.N.Y. 1984), however, Defendants reliance on <u>Smith</u> is misplaced because that case is distinguishable from the case at bar, for in <u>Smith</u> it was understandable that two very different movies could call for the same superstar to play totally different characters, whereas in the instant case, it is virtually unfathomable that two very similar sitcoms could be created by two very different pairs of writers who call for the same heretofore obscure actress to play substantially similar characters.

Rosa's first scene sets the tone for her entire character. It is clear to anyone from even a cursory reading of the Pilot/Treatment that she is fiery and temperamental. In her first scene she admonishes Ben and yells at him. Similarly in Gloria's very first scene in the "Modern Family" Pilot, Gloria is shown yelling and criticizing people.

Gloria and Ben were in an age disparate relationship with Gloria being the elder *See,* Plaintiff's Affirmation P. 15 ¶35. It can easily be gleaned from the Pilot script, especially by anyone like Levitan and Lloyd who earned their living primarily from rewriting other writer's original shows, that Rosa is older/more mature than Ben. When Rosa confronts Ben, she is talking to Ben, much more like his mother than an ex-wife or former love interest. In fact, she tells him that their son will soon be more of a man than he is. She makes him do the right thing with regards to their Latino son See, Amended Complaint P. 27-28 ¶125 . She makes him plan and pay for his son's birthday party, which he would not do otherwise.

21

·This is the major plot/character dynamic between Ben, Rosa and their son devised by Plaintiff to reoccur throughout the series. Similarly, Gloria is always making Jay do the right thing in regards to their Latino son/stepson *See,* Amended Complaint P. 28 ¶126; *See Also,* Plaintiff's Affirmation P. 17 ¶41. Defendants ascribed this trait of Rosa to Gloria and through this and other similarities in traits and characterization in combination with other parroted properties Defendants created the substantially similar, infringing Gloria character with the same total concept and feel as Plaintiff's Rosa character.

Misleadingly, attempting to manufacture differences were there are none, Defendants memorandum of law includes the egregious falsehood that no one laughs at Gloria and she is not a subject of ridicule *See,* Cendali Memorandum P. 20 ¶1; but, despite Defendants' false, perjurious, conclusory, self-serving statements, the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" *See,* Walker v. Time Life Films, Inc., 784 F.2d 44 at 50 (2d Cir.). Actually, the characters on "Modern Family" routinely laugh at Gloria; in fact, an episode is partially devoted to Jay and Manny and later the entire family laughing at Gloria and her accent See, "Modern Family" season 2 episode 6 "Halloween." Defendants try deny this and other obvious similarities because they know they copied this character trait and this character from Plaintiff and they know ordinary observers will recognize only through copying traits and characterization and parroting properties from "Loony Ben," did Defendants derive Gloria — a substantially similar, infringing, stunningly beautiful, fiery, temperamental, Latina mother character living in Los Angeles, who marries into a dysfunctional, multi-generational, multi-racial, pansexual extended family, has a thick accent, and always makes her ex/husband do the right thing where her son is concerned, and is laughed more at than with. Defendants even slip up and become entangled in their web of lies and deceit and admit Jay and Manny have fun at Gloria's expense *See,* Bradley Decl. 4 Season 2 at Halloween. Defendants' contention that Gloria is not laughed at is absurd and illustrative of the unethical lengths to which Defendants are determined to go to wrongly deceive this honorable Court into dismissing Plaintiff's meritorious claim, and Plaintiff submits for this, the Court should, sua sponte, impose Rule 11 sanctions.

Misleadingly, again, attempting to manufacture differences were there are none, Defendants claim that Plaintiff did not intended to accentuate Rosa's accent and heritage. But despite Defendants' false, conclusory, self-serving statements, the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" *See,* Walker v. Time Life Films, Inc., 784 F.2d 44 at 50 (2d Cir. 1986). Actress Sophia Vergara has a thick, Columbian accent. It is obvious, in inventing Sophia Vergara's role, which she has publicly acknowledged is perfect for her, that Plaintiff intended to utilize her accent and heritage for comedic effect in Plaintiff's comedy about racial/ethnic diversity. It is clear from the "Loony Ben" dialogue, especially to anyone like Levitan and Lloyd who earned their living primarily from rewriting other people's original shows, that Plaintiff intended to play-up Sophia/Rosa's thick accent for comedic effect. For example, Rosa tells Ben "I am not going to give you one red peso!" *See*, Amended Complaint Composite Exhibit "A" P. 10 And *See*, Bradley Decl. Exhibit 1 P. 8. Also, as opposed to speaking grammatically correct English, Rosa asks, "what kind of parent**s** forget**s** their own son's birthday?" Rosa is the only

character in "Loony Ben" who speaks in a Spanglish idiom; Rosa is the only character in "Loony Ben" who substitutes a Spanish nickname for a character's actual name; Rosa is the only character in "Loony Ben" who speaks Spanish *See,* Amended Complaint Composite Exhibit "A" P. 16 And *See*, Bradley Decl. Exhibit 1 P. 14 **Rosa:** (Ranting at Ben in Spanish) "Chico....."

Defendants try to make much out of the fact that Gloria is Columbian and Rosa is Latina. In fact, the reason Plaintiff, did not specify Rosa's nationality is because when Plaintiff created Sophia Vergara's Emmy nominated role Plaintiff did not know what her precise accent was; Plaintiff only knew that whatever type of Latino accent she possessed was what Plaintiff desired and believed integral to insure the success of "Loony Ben" and Plaintiff, therefore, tailored Rosa's dialogue to suit Vergara's accent See, <u>Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc.,</u> 338 F.3d at 134, Thus, Plaintiff's aesthetic decision to cast Sophia Vergara and utilize her accent for comedic effect in "Loony Ben" is analogous to plaintiff's use of texture and color in <u>Tufenkian Import/Export Ventures Inc. *See,* Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc.,</u> 338 F.3d 127 at134-35 (2d Cir.2003), district court erred in not considering whether the defendant "parrot[ed] properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art -the excerpting modifying, and arranging of public domain compositions, if any, together with the development and representation of wholly new motifs and the use of texture and color, etc.- are considered in relation to one another."

Defendants claim Gloria was never married to anyone with a mental illness; but, despite Defendants' false, conclusory, self-serving statements, the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" *See Also,* <u>Walker v. Time Life Films, Inc.,</u> 784 F.2d 44 at 50 (2d Cir.). Gloria says her ex-husband was a wild man, a "...crazy guy." *See,* Amended Complaint P. 21 ¶95; See Also, "Modern Family" season 1, episode 6 "Coal Digger," Gloria describes Manny's biological father as crazy and wild a "... crazy guy." Defendants ascribed this trait of Rosa (having a wild, crazy ex-husband) to Gloria and through this and other similarities in traits and characterization in combination with other parroted properties Defendants created the substantially similar, infringing Gloria character with the same total concept and feel as Plaintiff's Rosa character. Such similarities and parallelisms of treatment and characterization between Rosa and Gloria illustrate that these characters are, in fact, substantially similar in total concept and feel. Defendants' contention that Gloria was never married to a crazy man is absurd and illustrative of the unethical lengths to which Defendants are determined to go to wrongly deceive this honorable Court into dismissing Plaintiff's meritorious claim.

Thus, Plaintiff's unique treatment of combining aspects of Sophia Vergara's persona, including her accent, with particular traits of the fictional character and fictional situation of Rosa— a stunningly beautiful, fiery, temperamental, Latina mother living in Los Angeles, who marries into a dysfunctional, multi-generational, multi-racial, pansexual, family, has a thick accent, and always makes her ex/husband do the right thing where her son is concerned, and is laughed more at than with — in order to create a character for a show about a

"nutty," diverse "real" modern-day, American family and convey humor is protectable because defendants may infringe a copyright not only by literally copying a portion of a work, but also by "parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another" *See,* Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 at 134-35 (2d Cir.2003).

Sophia Vergara/Gloria in "Modern Family" appears in the same context, in the same type of sitcom, in the same type of role, as a member of the same type of diverse, dysfunctional, multi-racial, multi-generational, pansexual, extended family in Los Angeles as Sophia Vergara/Rosa in Plaintiff's original "Loony Ben." Through such parallelism of traits and characterization and parroting of properties from "Loony Ben" Defendants created a substantially similar, infringing character. And, Plaintiff submits that a jury consisting of ordinary reasonable lay observers, considering attributes and traits of both characters and the extent to which Defendants' Gloria captures the total concept and feel of Plaintiff's Rosa, can find the characters substantially similar. At the very least, it can not be said that reasonable minds comparing attributes and traits of Rosa and Gloria could not differ as to whether "Modern Family['s]" Gloria captures the total concept and feel of Rosa in "Loony Ben". Therefore, summary judgment/dismissal on this issue is precluded.

(C)    Jesus And Manny

A generic Latino boy character is not protectable; but, Plaintiff's unique treatment of a Latino boy character who is the son of Sophia Vergara, lives in Los Angeles, is a would-be Don Juan, attracted to older women, is a member of a dysfunctional, multi-generational, multi-racial, pansexual, family and is or feels he is Jewish is protectable, notwithstanding Defendants' diminimis changes. Defendants' contend Manny is not incorrigible or Jewish. However, this is just another false, misleading, self-serving, conclusory statement; the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" See, Walker v. Time Life Films, Inc., 784 F.2d 44 at 50 (2d Cir.). Like Jesus, Manny engages in incorrigible, delinquent behavior (See, Amended Complaint P. 24 ¶114-115; See Also, season 1, episode 5 "The Incident," Manny commits arson, setting another kid's bicycle on fire; See Also, season 1, episode 6 "Coal Digger," Luke and Manny are sent to the principal's office for fighting at school). Jesus is bi-racial with a Latina mother and a Jewish, Caucasian father. Similarly, Manny is a member of a blended family with a Latina mother and a Caucasian step-father. Defendants persist in claiming Manny is not Jewish. However, Manny obviously feels he is Jewish: Manny wants to play a Jewish role, "Tevia" in the Jewish musical, "Fiddler On The Roof and refers to and purports to know Jewish suffering Manny asks, "What does he know for suffering?" Manny has a pet with a Jewish name, Shell Turtlestein; *See,* "Modern Family" season 1 episode 17 "Truth Be Told"; *See Also,* Amended Complaint P. 35 ¶148. Defendants' contend Jesus is not attracted to older woman. However, this is just another false, misleading, self-serving, conclusory statement; the "works themselves supersede and control

24

contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" *See,* Walker v. Time Life Films, Inc., 784 F.2d 44 at 50 (2d Cir.). Jesus is obviously attracted to older woman, for example, when Kelly unexpectedly pops out of the cake he immediately voices his approval *See,* p. 16 See Also, Bradley Decl. Exhibit 1 P. 14. These unusual parallelism of traits and characterization— two Latino-Jewish boys who are would-be Don Juans, attracted to older women, are or feel Jewish, engage in incorrigible, juvenile delinquent behavior; live in Los Angeles; are members of a large, dysfunctional, multi-generational, multi-racial, pansexual extended family; and who both have a stunningly beautiful, fiery temperamental, Latina mother played by the exact same heretofore obscure actress— are indicative of and constitute infringement of Plaintiff's unique particular expression *See,* Sheldon v. Metro-Goldwyn Pictures Corporation, 309 U,S. 390 (1940); *See Also,* Daly v. Palmer, 6 F. Cas. 1132 (C.C.S.D.N.Y.1868) (No. 3552). Though Defendants may have made a few diminimis changes, for instance making Manny chubby instead of a heartthrob, dissimilarity will not automatically relieve the infringer of liability, for "no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." *See,* Williams v Crichton; *See Also,* Rogers v. Koons, 960 F.2d 301 at 308 (2d Cir.), cert. denied 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).

Even assuming arguendo that Defendants' diminimis changes prevented a finding of individual character protection in the Jesus character itself, Defendants nevertheless have failed to totally circumvent the United States Copyright Act and thus are still liable for infringement *See,* Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir 1977) (holding that a series of McDonald's commercials portraying "McDonaldland" had used as its basis and thereby infringed the "H.R. Pufnstuf" television show. <u>Corresponding characters to each, while displaying marked differences, taken altogether demonstrated that McDonald's had captured the total concept and feel of the show and had thus infringed</u>).

(D)    Ben's Daughter And Lily

Defendants' contend that Cameron sometimes dresses Lily as Diana Ross and Madonna, but at all other times she is dressed normally. However, this is just another false, misleading, self-serving, perjurious, conclusory statement; and the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" See, Walker v. Time Life Films, Inc., 784 F.2d 44 at 50 (2d Cir.). Lily is also dressed as cupid, as a referee, in Victorian garb, as Simba and by allusion as Martin Luther King Jr. with black-face *See,* Plaintiff's Affirmation P. 17 ¶42. Though Defendants may have made a few diminimis changes ( i.e. Lily instead of being the Asian, biological child of a Caucasian parent is adopted by a Caucasian family), dissimilarity will not automatically relieve the infringer of liability, for "no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." *See,* Williams v Crichton; *See Also,* Rogers v. Koons, 960 F.2d 301 at 308 (2d Cir.), cert. denied 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). Defendants' argument that Lily does not infringe on the character of Ben's daughter is not persuasive because it fails to consider the extent to which Defendants' Lily captures the total concept and feel of Ben's daughter. Defendants make much out of the fact that in the "Loony Ben" pilot, Ben's daughter only says, "Hi grandma;" however, they fail to mention that the only thing Lily has said on "Modern Family" is "mommy," so in that respect the

25

characters are substantially similar. With both characters the humor flows from the fact that the characters are both oddly clad Asian girls with Caucasian parents in a large "nutty," non-traditional, multi-generational, multi-racial, pansexual, dysfunctional family residing in present day Los Angeles, and in this sense Defendants' Lily captures the total concept and feel of Ben's daughter.

Furthermore, even assuming arguendo that Defendants' diminimis changes prevented a finding of individual character protection in the character of Ben's daughter, itself, Defendants nevertheless have failed to totally circumvent the United States Copyright Act and thus are still liable for infringement *See,* Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir 1977) (holding that a series of McDonald's commercials portraying "McDonaldland" had used as its basis and thereby infringed the "H.R. Pufnstuf" television show. "Corresponding characters to each, while displaying marked differences, taken altogether demonstrated that McDonald's had captured the total concept and feel of the show and had thus infringed)."

(E)     Herb/Marv And Mitchell/Cameron

A gay male character is not protectable; but Plaintiff's treatment of using a non-stereotypical, macho, heavyset, gay, male character who lives in Los Angeles, "marries" into a dysfunctional, multi-generational, multi-racial, pansexual, family, and is or feels he is Jewish, in order to convey humor and break down stereotypes and promote tolerance and acceptance of people's differences is protectable. Defendants' contend Cameron is not similar to Marv; however, this is just another false, misleading, self-serving, perjurious, conclusory statement; the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings" See, Walker v. Time Life Films, Inc., 784 F.2d 44 at 50 (2d Cir.). One of the gay male characters in "Loony Ben" is heavyset; the other is height-weight proportionate. The heavyset, gay, male character in "Loony Ben" is the more masculine figure See, Plaintiff's Affirmation P. 17-18 ¶43.

Like other characters in "Loony Ben" and "Modern Family," Cameron is apparently Jewish. For instance, Cameron tells Mitchell he got Lily invited to an exclusive party by pretending to be Methodist. This is a strategy often employed by Jewish people who wish to avoid discrimination by conforming or appearing to conform to Christianity. Defendants argument that Cameron does not infringe on the character of Marv is not persuasive because it fails to consider the extent to which Defendants' Cameron captures the total concept and feel of Marv *See,* Hogan v. DC Comics, supra. Defendants point to instances where Cameron does not display stereotypical masculine behaviors. However, despite Defendants' diminimiss changes, with both characters much of the humor flows from the fact that they are gay, male, parents who display non-stereotypical manly attributes and are members of a large "nutty," non-traditional, multi-generational, multi-racial, pansexual, dysfunctional family residing in present day Los Angeles, and in this sense Defendants Cameron captures the total concept and feel of Plaintiff's Marv.

Even assuming arguendo that Defendants' diminimis changes prevented a finding of individual character protection in the Marv character, itself, Defendants nevertheless have failed to totally circumvent the United States Copyright Act and thus are still liable for infringement See, Williams v Crichton; See Also, Rogers v. Koons, 960 F.2d 301, 308 (2d Cir.), cert.

26

'denied 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992), "... dissimilarity between some aspects of the works will not automatically relieve the infringer of liability, for "no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." *See Also,* Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir 1977) (holding that a series of McDonald's commercials portraying "McDonaldland" had used as its basis and thereby infringed the "H.R. Pufnstuf" television show. Corresponding characters to each, while displaying marked differences, taken altogether demonstrated that McDonald's had captured the total concept and feel of the show and had thus infringed).

Plaintiff is willing to stipulate that because Defendants were shrewd in creating the derivative character of Mitchell, in part by juxtaposing some traits of both Herb and Dr. Schwartz (i.e. effeminate, gay male father; and stylishly dressed lawyer who graduated from Columbia law school), as a matter of law, Defendants' Mitchell character probably can not be said to impermissibly infringe on the individual character of Herb or Dr. Schwartz, per se. However, Defendants' "sampling" from "Loony Ben" goes very far in duplicating the mood, total concept, and total feel of "Loony Ben."[17] Consequently, Defendants have failed to totally circumvent the United States Copyright Act and thus are still liable for infringement *See,* Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir 1977) (holding that a series of McDonald's commercials portraying "McDonaldland" had used as its basis and thereby infringed the "H.R. Pufnstuf" television show. Corresponding characters to each, while displaying marked differences, taken altogether demonstrated that McDonald's had captured the total concept and feel of the show and had thus infringed).

(F)    Dr. Schwartz And The Dutch Filmmaker

Defendants' use of camera angles, which could be the point of view of a Dutch Filmmaker, psychiatrist or just a style choice, is calculated to and does, in fact, replicate the same mood and feel of psychotherapy sessions, and in so doing contributes to Defendants' duplication of the mood and total feel of "Loony Ben." Plaintiff is not, however, as Defendants suggest, seeking a declaration that the unseen Dutch filmmaker impermissibly infringes on the individual character of Dr. Schwartz. Defendants' self-serving, conclusory statement that there is no documentary filmmaker on "Modern Family" is misleading. Defendant Steven Levitan himself has spoken about this character named, Geert Floortje, who lived with the Pritchard family as a Dutch exchange student and returns to film the Pritchard family who are the subjects of his documentary. Subsequently, Levitan has said there is no documentary filmmaker anymore and that the camera angles are now just a "style choice." Assuming arguendo that is true, this merely serves to provide support for Plaintiff's contention that Defendants' chose this literary device to replicate the same mood and feel not of a documentary film, but of psychotherapy sessions and in so doing go far in duplicating the mood and total feel of "Loony Ben." The existence of this and other disputed factual issues, upon which reasonable minds could differ, should be decided by a trial jury and necessarily precludes summary judgment.

Again, Defendants intentionally misrepresent the law, claiming that literary devices are not copyrightable But, See Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1329 (9th Cir.1983) The copyrights of literary works can be infringed even when there is no substantial similarity between the works' literal elements. One can violate the

27

copyright of a play or book by copying its plot or plot devices.

> iii.   DEFENDANTS' DIMINIMIS CHANGES WERE NOT SIGNIFICANT ENOUGH TO AVOID DUPLICATING "LOONY BEN['S]" CHARACTERS, FUNDAMENTAL ESSENCE OR STRUCTURE, AND TOTAL CONCEPT AND FEEL AND, THEREFORE, ONLY SERVE TO PROVIDE FURTHER EVIDENCE OF COPYTHEFT

As in "Modern Family," Plaintiff tackles the themes of racial stereotypes and racial prejudice in "Loony Ben." For instance, Olie's prejudice is addressed in "Loony Ben" when she can't believe a Black man can be Jewish. The scene deals with stereotypes in that Olie's prejudice is explored and overcome as she to some extent accepts the minority character as one of the family. Similarly, the character Jay often expresses belief in racial stereotypes and racial prejudice, which he overcomes to some extent as he accepts minority characters in "Modern Family." For example, reasonable minds could conclude the derivative character, Jay, in "Modern Family" is copied from or based on the Olie character in "Loony Ben" and that the Jay Pritchard character goes far in duplicating the same fundamental essence or structure or total concept and feel of "Loony Ben." Although Defendants may have made Jay a macho man, instead of a macho woman, courts "must recognize that dissimilarity between some aspects of the works will not automatically relieve the infringer of liability, for "no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." See, <u>Williams v Crichton</u> ; See Also, <u>Rogers v. Koons</u>, 960 F.2d 301, 308 (2d Cir.), cert. denied 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).

Also, a generic grandmother character is not protectable; but Plaintiff's treatment of a grandmother character who is a member of a dysfunctional, multi-generational, multi-racial, pansexual, family and terrifies everyone and insults peoples hair and weight, in order to depict family dysfunction and convey humor is protectable. Very tellingly, Defendants' memorandum of law omits all discussion of this character because it is substantially similar to the grandmother character in "Modern Family" See, Amended Complaint P. 41 ¶175-180.

Thus, though Defendants' unoriginal commingling and rearranging of "Loony Ben['s]" characters' traits may prevent a finding of individual character protection in some of Plaintiff's individual characters themselves, Defendants nevertheless have failed to totally circumvent the United States Copyright Act for in commingling and rearranging elements of "Loony Ben" Defendants have replicated in their infringing show, the total concept and feel of the Olie character and the unnamed grandmother character, as well as the fundamental essence or structure and total concept and feel of "Loony Ben" and thus are still liable for infringement *See,* <u>Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp.</u>, 562 F.2d 1157 (9th Cir 1977) (holding that a series of McDonald's commercials portraying "McDonaldland" had used as its basis and thereby infringed the "H.R. Pufnstuf" television show. <u>Corresponding</u> <u>characters</u> <u>to</u> <u>each,</u> <u>while</u> <u>displaying</u> <u>marked</u> <u>differences,</u> <u>taken</u> <u>altogether</u> <u>demonstrated</u> <u>that</u> <u>McDonald's</u> <u>had</u> <u>captured</u> <u>the</u> <u>total</u> <u>concept</u> <u>and</u> <u>feel</u> <u>of</u> <u>the</u> <u>show</u> <u>and</u> <u>had</u> <u>thus</u> <u>infringed).</u>

> iv.   "LOONY BEN" AND "MODERN FAMILY" BOTH INCLUDE CHARACTERS WHO AREN'T FAMILY MEMBERS

Grasping at straws, Defendants attempt to deceive this honorable Court into wrongly believing "Modern Family" at all

times remains focused solely on the Pritchard family, while falsely claiming "Loony Ben" centers around characters and places that do not even appear in the "Loony Ben" pilot script. For instance, Defendants argue that "Loony Ben" focuses on a nurse, a mental hospital and various unnamed mental patients that do not even appear in the "Loony Ben" pilot script. Defendants' argument that "Loony Ben" focuses on characters and places that do not even appear in the "Loony Ben" pilot script is absurd. Attempting to further deceive the Court, Defendants conveniently ignore the fact that, like "Loony Ben," "Modern Family" incorporates characters who are not members of the featured family See, Plaintiff's Affirmation P. 18 ¶44.

        c.     THE SETTINGS AND PACE ARE SUBSTANTIALLY SIMILAR

Plaintiff's original show and Defendants' infringing show are both set in exactly the same city, Los Angeles. Defendants' claim many television shows are set in Los Angeles, but this is just a self-serving, conclusory statement. It matters not that the entertainment industry is located in Los Angeles. All the major studios have back lots which routinely simulate other cities, such as New York, Chicago and Philadelphia and Plaintiff submits to the court that at the time Plaintiff wrote and copyrighted "Loony Ben" very few if any primetime television shows were set in Los Angeles. In fact, Plaintiff submits most authors, producers and network executives tended to shy away from setting TV shows in Los Angeles because they often feared the shows will look and feel "too Hollywood" to be believable or relatable to middle America. Thus, this setting choice is one of those **"aspects of... [Plaintiff's] ...work, termed 'expression,' that display[s] the stamp of the [Plaintiff] author's originality"** rather than Defendants' *See,* Stromback v. New Line Cinema, supra.

Defendants try to dismiss the fact that Defendants set the infringing show in the exact same city as Plaintiff's original show with their self-serving, conclusory statement that this is just a scène à faire, citing cases inapplicable to the instant case such as  . But, unlike defendants in those cases, Defendants, here, do not and can not pinpoint any common theme which makes it necessary that Defendants' infringing show must be set in Los Angeles. Similarly, Defendants, do not and can not pinpoint any common theme which makes it necessary that four of Defendants' infringing shows would have be set at birthday parties. Thus, the fact that both shows are set in Los Angeles and birthday parties are a focus can and does serve to provide evidence of literal copying of details, and substantial similarity with respect to setting and fundamental essence or structure and total concept and feel. The pace of both shows is fast. Both shows have a definite beginning, middle, and end. Both shows are timed to run 30 minutes.

        d.     THE TOTAL CONCEPT AND FEEL OF THE WORKS IS SUBSTANTIALLY SIMILAR

On a claim of copyright infringement, **a court is not to dissect the works at issue into separate components and compare only the copyrightable elements; instead, the inquiry is principally guided by comparing the contested work's total concept and overall feel with that of the allegedly infringed work, as instructed by a reader's good eyes and common sense** *See,* Boisson, supra.

        i.     "LOONY BEN" AND "MODERN FAMILY" BOTH HAVE LARGE ENSEMBLE CASTS

Again, Defendants attempt to deceive the Court, with a self-serving, conclusory statement that all characters, except Ben

are supporting roles; but, the works control contrary descriptions of the works contained in the pleadings" See, <u>Walker,</u> supra.; *See Also,* Plaintiff's Affirmation P. 18-19 ¶45. Despite Defendants' self-serving, false, misleading, perjurious statements to the contrary, the "works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings," and Plaintiff's Revised Treatment specifies unequivocally that Loony Ben "centers on family ... It will be the first show of its kind to tackle the issue of modern-day diversity not only in our society at large, but in a single family unit." *See,* Amended Complaint P. 37 ¶164; *See Also,* Amended Complaint Composite Exhibit "A" P. 3 ¶3; *See Also,* Amended Complaint Composite Exhibit "A" P. 13 And *See,* Bradley Decl. Exhibit 1 P. 11 Marv: "[W]e're just one big ... happy family here." Like "Modern Family," it is clear from the "Loony Ben" materials that the show is about minorities, race relations, racism, homophobia, ageism, and weightism (This can be gleaned just from reading Plaintiff's notes about extras on the Proposed Cast List See, Amended Complaint Composite Exhibit "A" P. 2). Ben is not a member of a racial minority group, Ben is not gay, Ben is not overweight, Ben is not old. Hence, "Loony Ben," must necessarily be about more than just Ben. Therefore, Defendants' absurd argument that Plaintiff's show is only about Ben and the 14 other characters are merely peripheral is illogical.

####      ii.      "LOONY   BEN"   AND   "MODERN   FAMILY"   HAVE   SIMILAR FORMATS/STRUCTURAL ELEMENTS

Defendants contentions that no character in Loony Ben ever breaks the fourth wall and that the sequence of events are always presented in chronological order with no switching between subplots or characters is absurd *See,* Plaintiff's Affirmation P. 5 ¶13, P. 19 ¶46. Defendants' use of the mockumentary format does not constitute a significant advancement *See,* Plaintiff's Affirmation P. 19 ¶47. The mockumentary format involves the use of an unoriginal, stock camera angle that Defendants stole from other shows, such as "The Office" "Thirty Rock" and "Arrested Development." Defendants' attempt to rely on their use of an unoriginal camera angle they stole from someone else as their own significant advancement to justify their infringing conduct is illustrative of the lengths to which Defendants are willing to go to deceive this honorable Court and use this honorable Court to complete their copytheft and work a terrible injustice to the detriment of the Plaintiff.

####      iii.      "LOONY   BEN"   AND   "MODERN   FAMILY"   HAVE   SUBSTANTIALLY SIMILAR TONES, MESSAGE , MORAL, TOTAL CONCEPT AND FEEL

As previously discussed ad nauseam Ben is not psychotic. Despite Defendants' repeated, persistent, redundant, self-serving, false, misleading, perjurious statements to the contrary, the works control contrary descriptions contained in the pleadings *See,* <u>Id</u>.. Also, as previously discussed ad nauseam in , Loony Ben is a about a large, diverse family of which Ben is one member *See,* Plaintiff's Affirmation P. 4 ¶14. Defendants seek to superimpose their own twisted, self-serving interpretation of "Loony Ben" on the Court, but the works control contrary descriptions contained in the pleadings *See,* <u>Id</u>. Despite Defendants' self-serving, false, misleading, statements to the contrary, Ben does not feel punished. Defendants failure to understand what "Loony Ben" and "Modern Family" are all about stems from the fact that Defendants are very prejudiced. As a result, they can not help but place value judgments on other people's human differences. Defendants placing value judgments on Ben (Phil's) gender ambiguity is illustrative of this fact that Defendants miss the whole point

of "Loony Ben" and their unauthorized, derivative work based thereon, to wit: THERE IS NOTHING INHERENTLY WRONG WITH BEING DIFFERENT, LATINO, ASIAN, BLACK, HEAVYSET, QUIRKY, GAY, BI-SEXUAL, OR SEXUALLY AMBIGUOUS. Defendants failure to comprehend and inability to analyze the tone, moral and message of the original and the unauthorized, infringing, derivative work correctly, strongly militates against the absurd notion that Defendants independently created something they do not even fully understand. In fact, in interviews the alleged creators and the actors have had difficulty analyzing and explaining exactly what "Modern Family" is about and why it is so successful *See,* Plaintiff's Affirmation P. 19 ¶48 for discussion of moral and message and total concept and feel. This begs the question how come Plaintiff can analyze "Modern Family" better than any reviewer, better than either of the alleged creators, better than anyone — because Plaintiff created it.

Even assuming arguendo that as Defendants claim Plaintiff's characters are "punished for being different," this still would not relieve Defendants from liability for infringement, for it is more Defendants' characters that can be said to be punished for their diversity *See,* "Modern Family" season 2 episode 6 "Halloween;" *See Also,* Bradley Decl. 4 Season 2 at Halloween e.g. Gloria feels punished when Jay laughs at her accent. *See Also,* Amended Complaint Phil feels punished when Jay questions his masculinity e.g. In season 1, episode 20 "Benched," Jay tells Phil, "Oh, you're such a woman." Moreover, the presence of such disputed factual issues necessarily precludes summary judgment.

Despite Defendants' self-serving, conclusory assertion to the contrary, "Loony Ben['s]" characters have developed back stories, and in any event characters' back stories are not a factor courts focus on when deciding questions of substantial similarity and Defendants' cite no precedent to suggest otherwise. Despite Defendants' self-serving, conclusory assertion to the contrary, "Loony Ben['s]" characters are not underdeveloped or stock characters. And, even assuming arguendo, the presence of some underdeveloped or stock characters, that would not ipso facto prevent a finding of copyright infringement *See,* Weitzenkorn v. Lesser, supra. *See Also,*"…[t]**he presence of such elements obviously does not forfeit copyright protection of the work as a whole,** but infringement cannot be found on the basis of such elements alone; it is the combination of elements, or particular novel twists given to them, that supply the minimal originality required for copyright protection" *See,* Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 at 1446 (9th Cir 1994). Through the lives of a zany, large, diverse family, "Loony Ben" takes an exaggeratedly funny, upbeat, life affirming, Pollyanna view of humanity and the future of race/minority group relations. To the substantial extent that "Modern Family" does the same, it only provides proof that the mood, tone, moral, message, fundamental essence or structure, and total concept and feel of the two shows are substantially similar and bear the stamp of Plaintiff's unique expression, which was misappropriated by Defendants' who are known for their, subtle, admittedly cynical brand of comedy, as well as their well documented, anti-diversity, racist views *See,* Amended Complaint P. 46-47 ¶229. Defendants' memorandum of law includes the argument which amounts basically to a conclusory assertion that Defendants only stole Plaintiff's idea, not the expression. But the two are not mutually exclusive; in fact, Defendants stole Plaintiff's ideas **and** the expression. Furthermore, Defendants' conclusory argument that they only stole Plaintiff's idea/s merely serves to provide support for

31

Plaintiff's action for idea misappropriation and theft of literary property.

**B.     PLAINTIFF HAS STATED A VALID CLAIM FOR CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT**

Plaintiff's claim for direct copyright infringement is well pleaded and factually and legally sufficient to support claims for contributory and vicarious copyright infringement See, Amended Complaint          .

**C.     PLAINTIFF HAS STATED A VALID CLAIM FOR IDEA MISAPPROPRIATION**

Count IV and Count IV of the Amended Complaint are not preempted by the Copyright Act and have been well pleaded and are factually and legally sufficient to support a valid claim for misappropriation of literary property and breach of implied or quasi contract.

**1.     Plaintiff's Idea Misappropriation Claims Are Not Preempted**

Plaintiff's idea misappropriation claims are not preempted because the nature of an idea misappropriation claim is qualitatively different from copyright. Copyright law protects the expression of the idea. On the other hand, the law of idea misappropriation affords protection to the idea itself.

> "Generally speaking ideas are as free as air... But there can be circumstances where neither air nor ideas may be acquired without cost. The diver who goes deep in the sea, even as the pilot who ascends high in the troposphere knows full well that for life itself, he, or someone on his behalf, must arrange for air (or its respiration-essential element, oxygen) to be specifically provided at the time and place of need. The theatrical producer likewise may be dependent for his business life on the procurement of ideas from other persons as well as the dressing up and portrayal of his self-conceptions; *he may not find his own sufficient for survival*" See, <u>Desny v. Wild</u>er, 46 Cal 2d 715, at 731, 299 P.2nd 257 at 265 (1956).

Likewise, Defendants business lives are dependent on the procurement of ideas from other persons. Likewise, Levitan and Lloyd, after their series of nothing but dismal failures found their own ideas and self-conceptions insufficient to assure their continued survival in the entertainment industry See, Amended Complaint P. 11 ¶43. Consequently, they endeavored to steal Plaintiff's brilliant story idea See, Amended Complaint P. 11 ¶44.

Defendants' assert their self-serving, conclusory, knowingly false, misleading, perjurious argument that Defendants' only access to Plaintiff's idea was through the copyrighted work, but Defendants know they had and Plaintiff has alleged in the Amended Complaint that they had access to Plaintiff's Revised Treatment, which, along with other writings, were not filed with the United States Copyright Office. Thus, Plaintiff has adequately alleged access to the idea apart from the copyrighted work. And, if necessary, Plaintiff can amend the Amended Complaint to allege Defendants' had access to the idea via other writings in addition to the copyrighted work and the Revised Treatment. Thus, Defendants fail to meet their burden of proof with respect to the first prong of the test for preemption. Secondly, Defendants know Plaintiff has alleged an extra element which makes his idea misappropriation claims qualitatively different from the copyright claims; to wit: novelty. Therefore, Defendants fail to meet their burden of proof with respect to the second prong of the test for preemption.

32

### 2.    Plaintiff Has Adequately Alleged Misappropriation

Defendants make the self-serving, conlcusory statement that the facts alleged in the Amended Complaint are insufficient to support a claim of idea misappropriation. But, Defendants do not adequately explain why the alleged facts are purportedly insufficient. Defendants merely parrot the legal standard. Therefore, Defendants fail to meet their burden of proving Plaintiff has not adequately alleged idea misappropriation.

### a.    Plaintiff's Story Idea For "Loony Ben," which Provided The Inspiration For Defendants' "Modern Family" Possesses The Requisite Degree Of Novelty Sufficient To Support A Claim Of Idea Misappropriation

Defendants reliance on Murray is misplaced because Murray is distinguishable from the case at bar. In Murray, the court found the plaintiff's "Father's Day" show story idea consisted of two story ideas, neither of which the court found to be novel. The Court found "Father's Day" involved an obvious combination of two general ideas which had been circulating around the industry for years, namely a typical, family sitcom with nonstereotypical Black characters. However, the instant case is distinguishable from Murray because the "Loony Ben" story idea consists of the **non-obvious** combination, of **specific** ideas, **which had not been circulated** around the industry about an **atypical** family sitcom.

Defendants' reliance on Murray is yet again misplaced for the Murray decision undercuts the logically inconsistent argument Defendants seem to be making that while "Modern Family" is novel, "Loony Ben" is not. Plaintiff has cited evidence in his Amended Complaint as to the novelty of "Modern Family." Plaintiff's Amended Complaint alleges sufficient facts to allow the trier of fact to draw the reasonable inference that Defendants copied "Loony Ben" and/or created a derivative work based thereon. Defendants, in tacit recognition of the fact that "Loony Ben" is novel, attempt to mislead the Court into believing it should not consider whether "Modern Family" is novel. However, Murray undermines their own logically inconsistent argument that the Court should not consider whether "Modern Family" is novel because in reaching its determination **the Murray court specifically held** *the allegedly infringing show* **was not novel.** Furthermore, any argument maintaining "Modern Family" is novel, but "Loony Ben" (the show copyrighted 3½ years prior to "Modern Family," upon which "Modern Family" is based) is not novel is absurd.[20] Thus, where, as in the instant case, Plaintiff presents evidence of undisputed facts indicating the infringing show is novel the Court should find the original, upon which the infringing show is based, can not, as a matter of law, be found to lack the requisite, sufficient degree of novelty to support a claim for idea misappropriation.

Furthermore, in pointing out how Plaintiff selected, combined and arranged ideas, Defendants seriously undermine their own argument that Plaintiff does not have a valid claim for copyright infringement for courts have held copyright protection extends to such selection, combination and arrangement of ideas *See,* Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446 (9th Cir 1994); See Also, United States v. Hamilton, 583 F.2d 448, 451 (9th Cir 1978) (Kennedy, J.); See Also, Metcalf, 294 F.3d at 1074; See Also, Feist, 499 U.S. at 358.[21]

### b.    A Legal Relationship Existed Between The Parties

A legal relationship existed between the Parties, which provides sufficient basis for inferring formation of an implied contract; and, furthermore, even assuming arguendo the nonexistence of a legal relationship, none is required to support a

claim of breach of quasi contract. Defendants attempt to describe Plaintiff's allegations concerning some of the third parties who were in a position to pass the "Loony Ben" materials onto Defendants as tenuous; however, for purposes of this motion, Defendants have stipulated that they do not contest access. Defendants, nevertheless, appear to be questioning the validity of the facts alleged in the Amended Complaint; however, it is Defendants' own acknowledgement of the existence of these very types of disputed, factual issues that underscores the need for discovery and trial and precludes the Court from granting summary judgment. And, furthermore, "On motions to dismiss under Rule 12(b)2, 12(b)6 and 12(c), the Court shall presume all allegations in the [c]omplaint as true" ...and resolve all doubts in plaintiff's favor "notwithstanding a controverting presentation by the moving party" *See,* Bulger v. Doulton, 2006 WL 3771016 (S.D.N.Y.). In assessing the legal feasibility of a complaint "... a court should not assay the weight of the evidence which might be offered in support thereof" *See,* Bulger v. Doulton, supra.

In cases involving implied, rather than express, contracts the promise and mutual assent is implied from and "rests upon the conduct of the parties and not their verbal or written words" See, Id. Bulger is factually distinguishable from the instant case. First, unlike the instant case, the alleged conduct creating the alleged legal relationship or contract, as to U.S.A., one of two defendants, was the signing of a written agreement, which would have created an express, rather than an implied contract. Secondly, Bulger is factually distinguishable from the instant case because the Bulger court's holding dismissing the complaint, with prejudice, as to U.S.A. was based primarily on its finding that no allegations of an existing legal relationship or contract were or could have properly been made against U.S.A. because the alleged conduct creating the alleged contract occurred years after the alleged breach. Thirdly, unlike Plaintiff in the instant case, in Bulger the plaintiff in not even the slenderest way suggested an alleged legal relationship was formed with U.S.A., based on the alleged conduct creating the alleged implied contract that plaintiff referenced in the complaint, making it impossible for the court to find any basis at all for finding any implied legal relationship existed between plaintiff and U.S.A. The court did, however, allow plaintiff in Bulger to proceed against the other defendant, PLC, and amend the complaint to allege a legal relationship was formed with PLC, based on the alleged conduct creating the alleged implied contract plaintiff referenced in the complaint.

Defendants also seek to rely on  Broadvision Inc. v. General Electric Co., No.08 Civ. 1478, 2009 WL 1392059, at 7 (S.D.N.Y. May 5, 2009), in support of their claim that no legal relationship existed between the Parties; but, again Defendants' reliance is misplaced. The Broadvision case is distinguishable because, unlike the case at bar, at dispute were two express contracts. In Broadvision in deciding the question of whether a legal relationship existed between the parties, the court focused on the issue of mutual assent and noted "Mutual assent must be inferred from the facts and circumstances of each case, including such factors as the specific conduct of the parties, industry custom and course of dealing." With respect to the first agreement plaintiff made no allegations of mutual assent on the part of one of the defendants, MedPro: i.e. no allegation of any specific conduct between plaintiff and MedPro, no allegation of contact or course of dealing between plaintiff and MedPro, no allegation of purchases from plaintiff by MedPro, no allegation that mutual assent may be inferred by industry custom. Thus, as to MedPro, **the court dismissed the breach of contract**

claim, based on the first agreement, for lack of mutual assent. However, the court allowed the other breach of contract claim, based on the second agreement, to proceed noting the claim was not preempted by the copyright act due to the fact that defendant's express written promise to pay constituted an extra element. Defendants seem to be deliberately conflating these two issues, in furtherance of their attempt to confuse not only the Plaintiff, but this honorable Court, as well. Contrary to what defendants would mislead the Court to believe allegations of intent to pay or be bound by other contractual terms are not required, in order to allege the existence of an implied legal relationship.

In the instant case, Plaintiff's Amended Complaint alleges sufficient facts and circumstances, including such factors as the specific contact and conduct between the Parties, course of dealing, and industry custom, sufficient to infer mutual assent. The standard custom and practice in the entertainment industry calls for companies to treat the submission of an idea as confidential. And, assuming arguendo that Plaintiff needs to file a second amended complaint, Plaintiff should be granted leave to allege additional facts concerning, inter alia, how Plaintiff submitted his story idea, Defendants subsequently used Plaintiff's idea, which was disclosed under circumstances indicating an expectation of payment, where industry custom dictates the submission of a story idea be treated as confidential and that if Plaintiff's idea is used Defendants shall compensate the Plaintiff.

Furthermore, even assuming arguendo the nonexistence of a legal relationship, none is required to support a claim of breach of quasi contract. This is so because a claim of quasi contract is not a contract claim at all. Quasi contract claims are based on a property theory of recovery, rather than a contract theory. Hence, quasi contract claims are suits not on the contract. Quasi contract actions are not true contract actions since "'quasi contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice.' ... Quasi contractual recovery is based upon **benefit accepted or derived** from which **the law implies an obligation to pay**" *See*, <u>Weitzenkorn v. Lesser</u>, 40 Cal. 2d 778, 794 [97 USPQ 545] (1953). Quasi contract claims are brought in the interest of **justice** (a concept alien to Defendants) to **avoid unjust enrichment**. "An action in **quasi contract is usually brought when** the transaction in question resembles a contract relationship but for the vital fact that **the parties have <u>not</u> exhibited a *mutual* manifestation of *assent*"** *See,* Williston, Contracts (rev. ed. 1936), 6, §3. Thus, Defendants' argument that mutual assent is required to support a claim of quasi contract is patently, objectively absurd and illustrative of the extreme, unethical lengths to which Defendants and their counsel are determined to go, in order to cover-up their larceny, defraud the Plaintiff and deceive not only this honorable Court, but the entire world. This and Defendants' other absurd arguments should prompt the Court to sua sponte consider the imposition of sanctions, including monetary sanctions, against all nineteen Defendants and their attorneys.

Assuming arguendo the Court grants Defendants' motion for dismissal, it should nevertheless grant Plaintiff leave to amend. It is well settled that the **federal courts should allow for liberal amendment of pleadings** *See,* Fed.R.Civ.P 15(a). This is so, particularly where, as here, in the instant case, Plaintiff has not previously requested leave to amend. Even in <u>Bulger</u>, cited by Defendants in support of their argument that Plaintiff's meritorious claim should be dismissed, that court though granting defendants' motion to dismiss, also granted plaintiff leave to amend the complaint against PLC,

one of the two defendants *See,* Bulger v. Doulton, supra.

<strong>c.   The Defendants Misappropriated And Used Plaintiff's Ideas</strong>

The Amended Complaint is well pleaded and alleges many similarities between "Loony Ben" and "Modern Family," which distinguish them from every other show in the history of television, but for each other, and give rise to a plausible inference that Defendants misappropriated and used Plaintiff's ideas. The Amended Complaint is well pleaded and contains sufficient factual allegations concerning Defendants' use of Plaintiff's ideas, in fact in attempting to defeat Plaintiff's meritorious copyright claim, Defendants basically argue that Defendants simply used Plaintiff's ideas, as opposed to the expression. The Amended Complaint is well pleaded and contains sufficient factual allegations concerning the causal nexus between Plaintiff's disclosure of and Defendants' use of Plaintiffs ideas. In support of their contention that the Amended Complaint contains no allegations concerning the causal nexus between Plaintiff's disclosure of and Defendants' use of Plaintiffs ideas Defendants cite Broughel I, 2009 WL 928280, (S.D.N.Y. May 5, 2009). But that case is inapposite to the case at bar, so Defendants' reliance on Broughel is misplaced; for that court found the allegedly misappropriated idea was actually presented to plaintiff by the defendant. Here, however, in the instant case, Plaintiff alleges Plaintiff submitted the story idea to Defendants and that Plaintiff filed the "Loony Ben" materials with the Writers Guild and the U.S. Copyright Office 3½ years prior to Defendants ever copyrighting "Modern Family". And, Defendants do not even pretend they suggested the idea to Plaintiff. Thus, any suggestion by reference that the instant case is factually similar to Broughel is absurd. Then, further confusing the issues, Defendants quote phrases taken out of context from the footnotes, which, read in context, concern independent source as a means of refuting nexus or causal connection: "In order to recover for breach of contract, a plaintiff must demonstrate some nexus or causal connection between his or her disclosure and the defendant's use of the idea, **i.e., where there is an independent source for the idea used by the defendant, there may be no breach of contract, and the plaintiff's claim for recovery may not lie** *See,* Broughel I, Id. In citing footnotes concerning independent source, Defendants underscore the need for discovery and trial and the inappropriateness of dismissal. After discovery, on a full factual record, it will be easier to determine whether any actions of the Defendants in fact transgressed Plaintiff's rights *See,* Freeplay Music, Inc., v. Cox Radio, Inc., 409 F.Supp.2d 259 (2005). Therefore, Defendants' motion for dismissal should be denied.

<strong>D.   PLAINTIFF HAS STATED A CLAIM FOR LIBEL PER QUOD AND SLANDER</strong>

First of all, Plaintiff's Amended Complaint doesn't even allege defamation per se, so Defendants should be estopped from wasting the Court's time arguing the issue. Secondly, Defendants' arguments that Defendants' statements are not defamatory are based on the false premise that admitted idea thief Steven Levitan (See, Exhibit "D") and his co-conspirator Christopher Lloyd are the "... rightful creators" of "Modern Family" (See, Memorandum p. 34 ¶1).

Thirdly, the Amended Complaint is well pleaded and contains allegations sufficient to support Plaintiff's defamation by implication or innuendo claims to wit: libel per quod and/or slander. The law recognizes a plaintiff may state a colorable claim for defamation by implication based upon misleading omissions or false suggestions emanating from otherwise truthful statements *See,* Silverman, 35 AD3d at 20-21 "The determination whether statements which are not defamatory

on their face may in fact be defamatory because of the use of innuendo is one which must be made by the court" *See,* WDM Planning, Inc. v United Credit Corp., 47 NY2d 50, 53 [1979]. Defendants cite Marci v. Mayer, 201 N.Y.S.2d 525 (N.Y. Sup. Ct. 1960), but Defendants' reliance on Marci v. Mayer is misplaced because Marci is distinguishable from the instant case since that plaintiff failed to allege any extrinsic facts showing defendant's statements were capable of defamatory meaning. In tacit recognition of the fact that the Amended Complaint contains sufficient facts of defamation by implication/innuendo, Defendants advance a blame the victim argument, predicated upon Defendants' absurd theory that injury to Plaintiff's reputation would not have occurred, if only Plaintiff had refrained from telling the truth about the origins of "Modern Family." Defendants cite dicta from Wojtczak v. Safeco Prop. & Cas. Ins. Companies, 669 F. Supp. 2d 305, 315 (W.D.N.Y. 2009) in support of Defendants' contentions that Plaintiff did not allege special damages and that the Court can not award damages for humiliation, degradation and mental anguish *See,* Memorandum P. 35 at n. 23. However, the Wojtczak case is factually distinguishable from the instant case, so Defendants' reliance on the court's dicta is misplaced. The Wojtczak court dismissed plaintiff's defamation claim due to lack of subject matter jurisdiction. In dicta, the court noted plaintiff alleged only mental anguish and, unlike Plaintiff in the instant case, alleged no pecuniary, economic harm. Furthermore, the court's dicta does not, as Defendants would mislead the Court to believe, suggest that courts are powerless to award damages for humiliation, degradation and mental anguish; but rather, the court indicated such allegations, without pleading special damages, would not state a claim for defamation by implication. Defendants' argument that the Wojtczak court's dicta established binding precedent limiting courts' power to awarding only special damages in defamation by implication actions is absurd. Defendants then cite yet another case that is inapposite to the case at bar in which **after** discovery and trial the court issued a directed verdict because, unlike the Plaintiff in the instant case, the plaintiff in that case alleged no pecuniary harm (the court also noted **after** discovery and trial plaintiff provided no medical proof of a causal link between the alleged defamatory statements and plaintiff's depression *See,* Sharratt v. Hickey, 799 N.Y.S. 2d 299, 735-736 3d Dept. 2005. Conversely, here, in the case at bar, Defendants seek to deny Plaintiff's right to discovery and trial, and dismiss Plaintiff's well pleaded Amended Complaint, which includes accurate, factual allegations of pecuniary, special damages, and which adequately support Plaintiff's claim of defamation by implication *See,* Amended Complaint P. 69 ¶¶329-333. Furthermore, given a reasonable opportunity to conduct discovery, Plaintiff is certain he will be able to accurately plead and prove additional special damages. In addition, the Amended Complaint includes sufficient factual allegations to support Plaintiff's prayer for relief, wherein Plaintiff asks the Court to pierce the corporate veil and hold Defendants Murdoch, News Corporation and Disney vicariously liable for the tortuous acts of their subsidiaries *See,* Amended Complaint P. 65-70 ¶¶343-360, P. 71-73 ¶¶365-377, P. 76-77 ¶¶ G. 2), G. 3).

E.    **PLAINTIFF HAS STATED A CLAIM FOR DISREGARDING THE CORPORATE FORM**

The Amended Complaint is well pleaded and states valid underlying, predicate claims and contains sufficient facts and allegations concerning Defendants Murdoch, News Corporation, Fox, Disney, ABC, Levitan, Lloyd, Picture Day Productions, and Levitan & Lloyd Productions, which warrant the Court disregarding the corporate form *See,* Amended

Complaint P. 65-73 ¶¶339-377.

### 1.  Plaintiff Has Stated A Claim That The Corporate Form Of News Corporation And Disney Should Be Disregarded

Attempting to dissuade the Court from piercing the corporate veil and disregarding the corporate form, Defendants do nothing more than assert self-serving, false, conclusory statements and cite cases inapplicable to the instant case, in support thereof, and take a few words and phrases from the Amended Complaint out of context, and dispute the facts and the inferences that can be drawn, all of which militates against the Court declining to pierce the corporate veil pursuant to a Rule (12)b 6 or summary judgment motion. For instance, Defendants cite ePlus Group, Inc., v. Panoramic Communications, LLC, No. 02 Civ. 7992, 2003 WL, 21512229, at *2 (S.D.N.Y. July 2, 2003); however, unlike Plaintiff in the instant case, the ePlus plaintiff initially only offered a one sentence justification for piercing the corporate veil, then offered a proposed amendment that contained absolutely no facts and merely parroted the applicable legal standard. In tacit recognition that Plaintiff has done more that parrot the applicable legal standard, Defendants selectively take a few words and phrases from the facts contained in the Amended Complaint regarding piercing and dispute the facts and inferences to be drawn therefrom. The existence of such disputed facts precludes granting Defendants' motion for dismissal. For example, that Plaintiff alleged all Defendants were well and able to pay for a "spec" pilot script in 2006, does not ipso facto mean all Defendants can now afford to satisfy judgment. Given that Defendants have made millions and stand to gain billions as a result of misappropriating Plaintiff's show, Plaintiff verily believes each Defendant can not individually satisfy judgment, and Defendants' Counsel filing for bankruptcy protection for Defendant Blockbuster belies their claim, and renders their argument that all Defendants can individually afford to satisfy judgment for copyright infringement on an international global scale absurd.

The Amended Complaint is well pleaded and contains sufficient allegations that Fox was the alter ego of News Corporation   and ABC was the alter ego of Disney See, Amended Complaint P. 65-68 ¶¶345-356. The Amended Complaint also contains sufficient allegations of unfairness See, Amended Complaint P. 71-72 ¶¶367-368, P. 72 ¶371. All the law requires is that plaintiff provides the grounds upon which his claim rests, pleading factual allegations sufficient to give rise, above the speculative level, to a right to relief. "Moreover, since Plaintiff is proceeding pro se, the court is required to construe his submissions liberally, 'to raise the strongest arguments that they suggest'" See, Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Assuming arguendo, that the Amended Complaint does not allege sufficient grounds to warrant disregarding the corporate form and piercing the corporate veil, any dismissal should be without prejudice and Plaintiff should be granted leave to amend to plead additional facts concerning alter ego and injustice either before or after discovery. Additionally, Plaintiff should be granted leave to file a second Amended Complaint, in order to include allegations of fraud.

### 2.  Plaintiff Has Alleged Sufficient Facts To Hold Defendant Murdoch Liable

Plaintiff's Amended Complaint presents evidence, including allegations describing a corporate culture of theft which exists at Fox, and quotes from a Fox employee suggesting Defendant Murdoch ascribes to that culture of theft, and a

quote from Defendant Murdoch, himself, admitting that as CEO he is ultimately responsible for the corporate acts of his companies/employees See, Amended Complaint P. 69-70 ¶¶357-360. Assuming arguendo, that the Amended Complaint does not allege sufficient grounds to warrant disregarding the corporate form and piercing the corporate veil, any dismissal should be without prejudice and Plaintiff should be granted leave to amend to plead additional facts concerning officer liability either before or after discovery. Additionally, Plaintiff should be granted leave to file a second Amended Complaint, in order to include allegations of fraud.

### 3. Plaintiff Has Alleged Sufficient Facts To Disregard The Corporate Veil As To Defendants Levitan and Lloyd

The Amended Complaint is well pleaded and states valid underlying, predicate claims and contains sufficient facts and allegations concerning Defendants Levitan, Lloyd, Picture Day Productions, and Levitan & Lloyd Productions, which warrant the Court disregarding the corporate form *See,* Amended Complaint P. 65 ¶¶339-342, P. 70-71 ¶¶361-364. Assuming arguendo, that the Amended Complaint does not allege sufficient grounds to warrant disregarding the corporate form and piercing the corporate veil, any dismissal should be without prejudice and Plaintiff should be granted leave to amend to plead additional facts concerning alter ego and injustice either before or after discovery. Additionally, Plaintiff should be granted leave to file a second Amended Complaint, in order to include allegations of fraud.

## II   PLAINTIFF HAS INCLUDED ENOUGH INFORMATION IN THE COMPLAINT TO DEFEAT A PRE-DISCOVERY MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"... [I]f a forum's personal jurisdiction over a defendant is questioned before discovery has commenced, in order to defeat the motion, a plaintiff only has to establish, prima facie, that personal jurisdiction is proper based on information in the [c]omplaint as well as supporting documentation" *See,* Id. Assuming arguendo Defendants motion could be granted based on failure to allege personal jurisdiction, the Court should allow Plaintiff leave amend.

### CONCLUSION

Defendants' analysis is fundamentally flawed. Defendants' scattershot approach unduly emphasizes isolated quotations and, therefore, does not address and can not resolve the fundamental problem that Defendants copied liberally from "Loony Ben" and the resulting parallelisms of plot, themes, incident, characterization, setting, details, tone, message, moral and mood all combined to create the same fundamental essence or structure, and total concept and feel in the substantially similar, infringing, derivative work "Modern Family." In the infringing work, itself, the character Mitchell, a lawyer, espouses Defendants' legal philosophy and legal strategy, to wit: "I am going to do what I am trained to do, I am going to lie, steal, beg, grovel...until I get what I want, I am a lawyer, damn it!" See, Plaintiff's Affirmation P. ¶. This philosophy is also reflected in Defendants' memorandum of law, wherein they lie by misstating and omitting facts and the law. Defendants' memorandum contains deliberate omissions and misstatements of law and fact and is misleading. Defendants' motion is, for the most part, frivolous and brought in bad faith and the Court should impose sanctions as a result. On the other hand, Plaintiff's Amended Complaint is more than plausible and raises serious doubts about the authenticity of Levitan and Lloyd's purported original authorship of "Modern Family."

"...[C]ourts have observed that **summary judgment is peculiarly inappropriate in copyright infringement cases** due

to their inherent subjectivity *See, * <u>Hoehling</u>, supra. The question of substantial similarity, whether the work is recognized by an ordinary observer as having been taken from the original is better put to a jury. "It is the function of the jury, not of this court, to weigh conflicting evidence and judge the credibility of witnesses." *See*, <u>Transgo supra;</u> *See Also*, <u>Glovatorium</u>, supra. After discovery, on a full factual record, it will be easier to determine whether any actions of the Defendants in fact transgressed Plaintiff's rights See, <u>Freeplay Music, Inc.</u>, supra. For now, it is sufficient that Plaintiff's Amended Complaint adequately alleges that Defendants have violated Plaintiff's rights. Defendants' Motion To Dismiss must, therefore, be denied with prejudice and the Court should order Defendants to retain separate, independent counsel and answer the Amended Complaint and proceed toward a full and just determination on the merits.

Logic, fairness and justice dictate Defendants' motion should be denied, lest Defendants' show will prove prophetic and contrary to legislative intent Defendants will have succeeded in rendering almost this entire body of law, as a practical matter, meaningless by reducing the protection afforded to writers by the Copyright Act and New York State law sadly to what it is to Defendants, nothing more than an unenforceable joke.

WHEREFORE, for all the forgoing reasons, Defendants' Motion To Dismiss should be denied in its entirety, with prejudice; or in the alternative, if Plaintiff's Amended Complaint is dismissed, dismissal should be without prejudice and Plaintiff should be granted leave to amend to file a second amended complaint; or, in the alternative, if the state claims are dismissed with prejudice, the Court should, nevertheless, hear the federal claims or grant Plaintiff leave to amend, so Plaintiff can file a second amended complaint for copyright infringement; or in the alternative, if the federal claims are dismissed with prejudice, the Court should, nevertheless, hear the state claims based on diversity jurisdiction or dismiss the state claims without prejudice and grant leave to amend, so Plaintiff can either file a second amended complaint or commence an action to assert Plaintiff's state rights in state court and receive a full and fair determination on the merits. Otherwise, the federal courts could conceivably be guilty of denying litigants equal protection under the law, based upon whether they initiate idea theft cases in a federal or state forum.

## FOOTNOTES

1. The Writer's Guild of America West is an intellectual property registry which retains submitted works in a sealed envelope in the event that, as here, a work becomes the subject of a legal dispute.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN ALEXANDER aka/ ALEX MARTIN

- against -

KEITH RUPERT MURDOCH; NEWS CORPORATION,
INC., DISNEY ENTERPRISES, INC. (THE WALT
DISNEY COMPANY, INC.); FOX ENTERTAINMENT
GROUP, INC.; AMERICAN BROADCASTING
COMPANIES, INC. (ABC)    & AFFILIATES; STEVEN
LEVITAN; CHRISTOPHER LLOYD; PICTURE DAY
PRODUCTIONS, INC.; LEVITAN AND LLOYD
PRODUCTIONS, INC.; CBS BROADCASTING, INC.;
APPLE, INC.; HULU, LLC.; AMAZON.COM, INC.;
BLOCKBUSTER, INC.; IMDB.COM; BRITISH SKY
BROADCASTING GROUP, PLC; RTL GROUP;
SKY ITALIA; AND FOXTEL

**10 Civ. 5613 (PAC) (JCF)**

**AFFIRMATION OF SERVICE**

I, MARTIN ALEXANDER, **declare under penalty of perjury** that I have served a copy of the attached Plaintiff's Amended Memorandum Of Law In Support Of Affirmation In Opposition To Defendants' Motion To Dismiss upon Dale M. Cendali, Esq., at Dale M. Cendali, Esq., Kirkland & Ellis, LLP, Citigroup Center, 153 East 53rd Street, New York, New York 10022-4611

by *U.S. Express Mail*

Dated: March 29, 2011
*Youngstown, Ohio*

Martin Alexander
Pro Se
2506 S Schenley Ave.
Youngstown, OH 44511
(213) 924-9965

March 29, 2011

Martin Alexander
2506 S. Schenley Ave.
Youngstown, O.H. 44511
Oldbway42@hotmail.com
(213) 924-9965

Pro-Se Office
Clerk of Courts
U.S. District Court (S.D.N.Y.)
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 230
N.Y.C., N.Y. 10007

RE:    Civil Action No. 10-civ-5613 (PAC) (JCF),
Alexander v. Murdoch, et al,
Affirmation In Opposition To Motion To Dismiss,
Memorandum Of Law In Support Of Affirmation In Opposition To Motion To Dismiss

Dear Clerk:

Enclosed please find Plaintiff's Affirmation In Opposition To Motion To Dismiss, and Memorandum Of
Law In Support Of Plaintiff's Affirmation In Opposition To Motion To Dismiss, and amended versions,
for filing in the above referenced action.

Respectfully Submitted,

Martin Alexander
2506 S. Schenley Ave.
Youngstown, O.H. 44511
(213) 924-9965
Pro-Se



SCANNED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RECEIVED
APR 05 2011

# MEMORANDUM
*Pro Se* Office

**To:** The Honorable James C. Francis IV, United States Magistrate Judge

**From:** A. Cavale, *Pro Se* Office, x0177

**Date:** March 31, 2011

**Re:** <u>Alexander v. Murdoch, et. al.,</u> **10 Civ. 5613 (PAC)(JCF)**

The attached document, which was received by this Office on <u>March 31, 2011</u> has been submitted to the Court for filing. The document is deficient as indicated below. Instead of forwarding the document to the docketing unit, I am forwarding it to you for your consideration. <u>See</u> Fed. R. Civ. P. 5(d)(2)(B), (4). Please return this memorandum with the attached papers to this Office, indicating at the bottom what action should be taken.

( )   No original signature.

( )   No affirmation of service/proof of service.

( )   The request is in the form of a letter.

( X )   Other: <u>Plaintiff submits both an Affirmation and Memorandum of Law and an Amended Affirmation and Memorandum of Law. In addition, the attached Amended Affirmation in Opposition to Defendants' Motion to Dismiss contains a CD Rom. Please advise if this document can be accepted for filing.</u>

(✓)   **ACCEPT FOR FILING**          ( )   **RETURN TO *PRO SE* LITIGANT**

_____
United States District Judge

Comments:
_____
_____
_____
_____
_____

_____
United States Magistrate Judge

Dated: 4/5/11



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

# MEMORANDUM
*Pro Se* Office

**To:**        The Honorable James C. Francis IV, United States Magistrate Judge

**From:**     A. Cavale, *Pro Se* Office, x0177

**Date:**      March 31, 2011

**Re:**        **Alexander v. Murdoch, et. al., 10 Civ. 5613 (PAC)(JCF)**

       The attached document, which was received by this Office on <u>March 31, 2011</u> has been submitted to the Court for filing. The document is deficient as indicated below. Instead of forwarding the document to the docketing unit, I am forwarding it to you for your consideration. <u>See</u> .Fed. R. Civ. P. 5(d)(2)(B), (4). Please return this memorandum with the attached papers to this Office, indicating at the bottom what action should be taken.

( )    No original signature.

( )    No affirmation of service/proof of service.

( )    The request is in the form of a letter.

( X )  Other: <u>Plaintiff submits both an Affirmation and Memorandum of Law and an Amended</u> <u>Affirmation and Memorandum of Law. In addition, the attached Amended Affirmation in</u> <u>Opposition to Defendants' Motion to Dismiss contains a CD Rom. Please advise if this</u> <u>document can be accepted for filing.</u>

( )  **ACCEPT FOR FILING**         ( )  **RETURN TO *PRO SE* LITIGANT**

Comments:
_____

_____      United States District Judge

_____

_____

_____

                                        United States Magistrate Judge

Dated: