UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 14, 2011_____
```

-----------------------------------------------------X
MARTIN ALEXANDER a/k/a          :
ALEX MARTIN,                    :
                               :
            Plaintiff,          :        10 Civ. 5613 (PAC) (JCF)
                               :
        -against-               :        ORDER ADOPTING R&R
                               :
KEITH RUPERT MURDOCH, et al.,   :
                               :
            Defendants.         :
-----------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      In an episode of *Modern Family*, after pilfering a neighboring toddler's stack of blocks during a children's class and attempting to pass it off as his daughter's work, Mitchell Pritchett exclaims, "I don't know what's happened to me, but I just stole a baby's intellectual property." In the instant case, *pro se* Plaintiff Martin Alexander ("Plaintiff") alleges that he was the victim of an analogous scheme.

      Plaintiff brings this action against the creators, producers, distributors, and broadcasters of the television situation comedy *Modern Family*, alleging copyright infringement under 17 U.S.C. § 101 *et seq.*, and idea misappropriation and defamation under New York law. Specifically, Plaintiff alleges that Defendants unlawfully made use of protected content from his copyrighted treatment and pilot script, entitled "Loony Ben." Defendants move to dismiss the complaint, arguing that no reasonable jury could find substantial similarity between "Loony Ben" and *Modern Family*, and that, therefore, Plaintiff has failed to state a claim upon which relief may be granted. On May 27, 2011, Magistrate Judge Francis issued a Report and Recommendation ("R&R") that this Court grant Defendants' motion. On June 26, 2011, Plaintiff

objected to the R&R. On July 13, 2011, Defendants filed responses to Plaintiff's objections. For the reasons that follow, the Court adopts Magistrate Judge Francis's R&R in its entirety. Accordingly, Defendants motion is GRANTED, and Plaintiff's complaint is dismissed.

## BACKGROUND[1]

Plaintiff alleges that he and a collaborator created and wrote a treatment and pilot script for a television sitcom entitled "Loony Ben." (Am. Compl. ¶ 29.) Plaintiff filed the "Loony Ben" treatment, cast list, and pilot script (collectively, the "Treatment") with the United States Copyright Office. (Id. ¶ 30.)  Plaintiff claims that, in early 2006, he began circulating the Treatment to television agents, producers, directors, and executives. (Id. ¶ 33.)

In September 2009, *Modern Family*, allegedly created by Steven Levitan and Chistopher Lloyd, debuted in the United States on the ABC network.  Plaintiff alleges that, in creating, producing, and distributing *Modern Family*, Defendants have infringed on his copyright in "Loony Ben."

A short synopsis of the two works will be sufficient for the legal analysis necessary to dispose of Plaintiff's claims.

## I. "Loony Ben"

"Loony Ben," set in Los Angeles, California, tells the story of Ben Figiwitz, a 30-year-old handyman who suffers from "various mental-psychological problems," for which he frequently visits a psychiatrist, Dr. Schwartz. He has two ex-wives — Bling, who is Asian, and Rosa, who is Latina — with each of whom he has a child. Ben's current love interest is Kelly, a

---

[1] Unless otherwise noted, all facts are taken from the R&R.

blonde, bisexual librarian. The show also follows the exploits of Ben's extended family, including his father, his father's husband, his mother, his two ex-wives, and his two sons.

The pilot script involves Ben's planning of two parties on the same day — a bachelor party for his ex-brother-in-law and a birthday party for his son (with Rosa) Jesus. Ben finds a stripper for the bachelor party, which he accidentally sends to Jesus's birthday party. In the final scene of the pilot, the stripper, who turns out to be Kelly, jumps out of a box at the birthday party, creating an awkward situation and causing Jesus to exclaim, "Coooooooooool!"

**II. *Modern Family***

*Modern Family* is set in Los Angeles, California as well. The show follows the everyday lives of a large extended family with three distinct units, with each episode dividing its time roughly equally between the three individual families making up the extended family. The show is presented as a mock documentary — the characters often speak directly into the camera as though they are being interviewed, although the interviewer is never seen or heard.

The first family is headed by Claire and Phil Dunphy. Phil is a real estate agent, and Claire stays home with their daughters Haley and Alex, and son Luke. Claire is a responsible parent, while Phil prefers to be thought of as "cool" and, as a result, has trouble disciplining his children at times. Haley is a popular high school student and has a boyfriend named Dylan, while Alex is the brainy child. Luke is the Dunphy's youngest child, who seems to act strangely and immaturely at times.

The second family is headed by Claire's father, Jay Pritchett, and his (much younger) second wife Gloria. Jay owns and manages a construction company, while Gloria stays at home

with her son, Manny. Gloria and Manny are Colombian, and Gloria speaks with a thick accent. Manny has frequent crushes on girls and women and acts extremely mature for his age.

Jay's son Mitchell heads the third family, along with his same-sex partner Cameron Tucker. Mitchell is a lawyer, while Cameron takes full time care of the couple's Vietnamese infant daughter, Lily. Mitchell is the smaller of the two, dresses neatly, and can be uptight. Cameron is large and imposing, but dresses and acts flamboyantly.

## III. Procedural History

Plaintiff filed his original complaint in this case on July 23, 2010. On August 10, 2010, the Court referred the case to Magistrate Judge Francis for general pretrial matters.  Plaintiff filed an amended complaint on December 23, 2010.  Defendants filed their motion to dismiss on January 21, 2011.  On May 27, 2011, Magistrate Judge Francis issued an R&R, recommending that this Court grant Defendants' motion to dismiss.

## <u>MAGISTRATE JUDGE FRANCIS'S R&R</u>

## I. Applicable Law

### A. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>  Pleadings of a *pro se* plaintiff, however, are held to a less

4

stringent standard and should be construed liberally "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

In considering a motion to dismiss, a court may consider the pleadings, but may also consider documents "integral to the complaint," or documents necessarily relied on by the plaintiff in drafting the complaint. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis omitted). Defendants suggest that the Court could convert this motion into one for summary judgment if the Court wants to consider additional documents that Defendants submitted. Magistrate Judge Francis, however, found that this was not necessary because "[t]he additional material submitted by the parties . . . all present or summarize content that was relied upon by plaintiff in drafting his complaint." (R&R 12.)

Magistrate Judge Francis also noted that "copyright actions that consider the legal issues raised here are appropriately addressed in a motion to dismiss." (Id.) Specifically, where, as here, the works in question are attached to the Plaintiff's complaint or were necessarily used in drafting the complaint, "it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." Peter F. Gaito Architecture v. Simone Development Corp., 602 F.3d 57, 64 (2d Cir. 2010). "[W]hile the question of substantial similarity often presents a close issue of fact that must be resolved by a jury, district courts may determine non-infringement as a matter of law either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Allen v. Scholastic, Inc., 739 F. Supp. 2d 642, 655 (S.D.N.Y. 2011). As a result, Magistrate Judge Francis considered this motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

*B. Copyright Infringement*

In order to establish a claim of copyright infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Peter F. Gaito Architecture, 602 F.3d at 63 (quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999)). Defendants concede that Plaintiff has a valid copyright for "Loony Ben" and that they had access to the Treatment. (R&R 13.)

"The standard test for substantial similarity . . . is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." Lapine v. Seinfeld, 375 F. App'x 81, 82 (2d Cir. 2010); Allen, 739 F. Supp. 2d at 654.  Where a copyrighted work contains both protectable and unprotectable elements, however, "the usual 'ordinary observer' test becomes 'more discerning,' and requires the Court to 'attempt to extract the unprotectable elements from . . . consideration and ask whether the protectable elements, standing alone, are substantially similar.'" Allen, 739 F. Supp. 2d at 654 (citation and emphasis omitted). Under either the ordinary or more discerning observer standard, "a court is not to dissect the works at issue into separate components and compare only the copyrightable elements." Id. at 654 (citation omitted).  In the end, the more discerning analysis is "principally guided by comparing the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by [a viewer's] good eyes and common sense." Peter F. Gaito Architecture, 602 F.3d at 66 (citations omitted). Magistrate Judge Francis also noted that "when assessing substantial similarity with respect to television shows, courts consider a variable list of characteristics, including primarily 'plot, characters, total concept and

feel (mood), setting, format and pace." (R&R 15 (citing <u>Robinson v. Viacom International, Inc.</u>,

No. 93 Civ. 2539, 1995 WL 417076, at *8 (S.D.N.Y. July 13, 1995)).)

## II. Application

### A. Plot

Magistrate Judge Francis first compared the general plots of "Loony Ben" and *Modern Family*, but found that the comparisons were "totally insufficient to establish substantial similarity." (R&R 16.)  First, Magistrate Judge Francis addressed Plaintiff's claim that both works — the pilot script of "Loony Ben" and an episode of *Modern Family* — involve children's birthday parties where things go wrong. (<u>Id.</u>) Magistrate Judge Francis found that birthday parties are "scenes á faire in family-focused situation comedies and thus do not enjoy copyright protection," and that "there are no factual similarities between the parties depicted." (<u>Id.</u>)

Next, Magistrate Judge Francis found that "the comedic devices shared by both works" — such as characters driving recklessly or drinking alcohol — are "common plot elements and thus are not subject to copyright protection." (<u>Id.</u> 16-17.)  The remaining similarities noted by Plaintiff, according to Magistrate Judge Francis, were alleged by Plaintiff "at an overly-abstract level of generality." (<u>Id.</u> 17.) For example, Magistrate Judge Francis mentioned that the fact that both works depict a character singing a sexually inappropriate song at a family gathering was too abstract because "the details of these scenes render them significantly different." (<u>Id.</u>) Specifically, in "Loony Ben," the"inappropriate" love song ("Happy Birthday" sung in the style of Marilyn Monroe) was sung by Ben's mother at a child's birthday party, while in *Modern Family*, Dylan sings a sexually inappropriate song to Haley in her house, not during a birthday party. (<u>Id.</u> 17-18.)

Magistrate Judge Francis also noted several other examples of generalized comparisons, including instances where a "Latino boy looks up and voices his approval at the sight of a beautiful adult woman," (Am Compl. ¶ 189-90), where "a [woman] who sheds her 'dowdy' clothes, 'fixes her hair' and 'becomes beautiful,'" (Id. 18.), and where the characters engage in "therapy sessions" (Id. 19). Magistrate Judge Francis found that none of these comparisons indicate infringement — indeed, the "therapy sessions" in "Loony Ben" were actual therapy sessions with a therapist, while the referenced "therapy session" in *Modern Family* was a parody where Claire confides in Manny, her 10-year-old step-brother. (Id.)  Lastly, Magistrate Judge Francis found that the fact that the word "Martians" appears in both works does not suggest infringement and, in any event, the contexts in which the word was spoken in the two works were completely different. (Id. 19-20.)

*B. Characters*

Magistrate Judge Francis next considered whether any the characters in both works were substantially similar to each other, therefore constituting copyright infringement.  "When comparing two characters, 'a court must consider the totality of their attributes and traits." (R&R 20 (citing Robinson v. Viacom Intern., Inc., No. 93 Civ. 2539, 1995 WL 417076, at *9 (S.D.N.Y. July 13, 1995)).)

1. "Loony" Ben Figiwitz and Phil Dunphy

First, Magistrate Judge Francis considered Ben and Phil, and concluded that the "alleged similarities do not stand up to sustained examination." (R&R 21.) Plaintiff claims that Ben and Phil are both tall, dark-haired, middle-aged, Jewish men. (Am. Compl. ¶ 117-18.)  Magistrate Judge Francis pointed out, however, that Phil is neither tall, nor middle-aged, nor-Jewish, and

"there is no substantial similarity to be found between two characters who share only their sex and hair color." (R&R 21-22.) In addition, Magistrate Judge Francis noted that Phil does not suffer from the psychological problems that Ben does, which include multiple personality disorder, schizophrenia, and depression. (Id. 22.) Yes, Phil is afraid of clowns and the dark and may have attention deficit hyperactivity disorder, but his "ailments" are completely different from Ben's and do not require therapy or medication, as do Ben's ailments. (Id. 22-23.)

Plaintiff also claims that Ben and Phil are both childish and suffer from "Peterpanism," meaning that they are adult characters who act in childish ways. Magistrate Judge Francis found that a character with these tendencies is not copyrightable and that, in any event, the means by which the characters act childishly manifest themselves in completely different ways in the two works. (R&R 23 (citing Jones v. CBS, Inc., 733 F.Supp. 748, 753 (S.D.N.Y. 1990)).)  Further, Plaintiff claims that both Ben and Phil are "sexually ambiguous." (Id.) Magistrate Judge Francis construed this to mean that the characters both engage in non-gender stereotypical behavior, but found that "there is nothing copyrightable about a character who does not conform to gender stereotypes," and that the only nonconforming gender characteristic that Ben and Phil share is that they both occasionally cook. (Id. 23-24.) Magistrate Judge Francis found that "this is insufficient to show substantial similarity given the vast array of other hobbies and personal preferences Ben and Phil do not share." (Id. 24.)  Plaintiff also claims that both Ben and Phil are "obsessed with rock stars," (Am. Compl. ¶ 118), but "there is no evidence that Phil shares Ben's dream of being a rock musician or his resulting tendency to impersonate rock stars." (R&R 25). Lastly, Plaintiff claims that Ben and Phil are substantially similar because they are both attracted to blonde women, (Am. Compl. ¶¶ 153-54), but "attraction to blonde women cannot be said to be a rare or unique character trait; it is a basic character type and is not copyrightable." (R&R 26).

9

2. Rosa (Ben's ex-wife) and Gloria (Jay's much younger second wife)

Plaintiff argues that Rosa and Gloria are substantially similar because each is a "stunningly beautiful, fiery, temperamental, Latina mother, with a thick accent, who's in love with her Caucasian [ex-husband/husband] and always makes him do the right thing, especially where her son is concerned." (Am. Comp. ¶¶ 125-26.) Magistrate Judge Francis, however, found that, Rosa is a stock character and, therefore, not copyrightable because Rosa only has eight lines of dialogue in the pilot script and "the Treatment does not present her as a developed character but rather as a stereotype of a passionate Latina woman." (R&R 26-27.) In addition, Magistrate Judge Francis found that the several alleged similarities between the characters were not supported by the works themselves. (Id. 27-28.) The one existing similarity between the characters is that, in the Treatment, Plaintiff suggested that Rosa be played by actress Sofia Vergara, and Gloria is actually played by Sofia Vergara in *Modern Family*. (Id. 28.) Magistrate Judge Francis found this to be a coincidence and found that "plaintiff's allegation that Rosa and Gloria are substantially similar because the same actress has the capacity to play each role is insufficient to meet his burden." (Id. 28-29.)

3. Jesus (Ben's and Rosa's son) and Manny (Jay's and Gloria's son), plus others

Plaintiff argues that Ben's son, Jesus, shares characteristics with three *Modern Family* characters. Magistrate Judge Francis noted, however, that Jesus has only one line in the pilot script, and therefore is "insufficiently developed to be copyrightable." (R&R 29 (citing Jones, 733 F. Supp. at 753).) In addition, Magistrate Judge Francis found that "the only observable similarity between Jesus and Manny is that the former is half-Latino and the latter is Columbian. This is insufficient to support a finding of substantial similarity." (Id. 30.) As for Plaintiff's

10

claimed similarities between Jesus and Dylan or Phil, Magistrate Judge Francis noted that there is no evidence and Dylan is Latino or even "Latino looking," and that Phil did not utter any lines similar to Jesus's singular line in the pilot script: "Cooooooooooool!" (Id. 30-31.)

### 4. Ben's Unnamed Daughter and Lily (Mitchell and Cameron's infant Vietnamese daughter)

Plaintiff argues that Ben's unnamed daughter is substantially similar to Lily but, as with Jesus, Magistrate Judge Francis found that Ben's unnamed daughter is "insufficiently developed to be copyrightable." (R&R 31.) Significantly, the Treatment does not give the character a name or any lines. (Id.)  In addition, while the Treatment describes Ben's daughter as "Jewish-Asian" and "about 13 years old," Lily is an entirely Vietnamese infant. (Id. 31.) As a result, Magistrate Judge Francis found that this comparison fails. (Id. 32.)

### 5. Herb/Marv and Mitchell/Cameron (both same-sex relationships)

Herb is Ben's father and Marv is his husband (Pilot Script 1.)  Plaintiff argues that Herb's and Marv's same-sex relationship is substantially similar to Mitchell's and Cameron's because both couples are comprised of two gay men, one of which is heavyset and masculine, while the other is "height-weight proportionate." (Am Compl. ¶ 139-40.) Magistrate Judge Francis found, however, that "the idea of a gay male couple wherein one partner is overweight and the other is average weight cannot be copyrighted," and pointed out that Cameron, the more overweight character on *Modern Family* may not actually be the "more masculine," as between him and Mitchell. (R&R 32.) According to Magistrate Judge Francis, "while Herb and Marv divide their gender roles along relatively stereotypical lines, Mitchell and Cameron do not separate as evenly into 'feminine' and 'masculine' gender stereotypes." (Id. 32-33.) As a result, Magistrate Judge Francis found that this comparison fails. (Id.)

11

6. Dr. Schwartz and the "non-psychiatrists"

      Plaintiff alleges similarities between Dr. Schwartz, Ben's psychiatrist, and three *Modern Family* characters — Mitchell, Jay, and the unnamed, unseen, and unheard documentary filmmaker. (Am. Compl. ¶ 141,42, 149-50, 157-62.) Plaintiff alleges that Dr. Schwartz and Jay are similar solely because they are both from Cleveland, Ohio — but, as Magistrate Judge Francis points out, it is unclear that Jay is from Cleveland, and even if he is, this detail is completely inconsequential. (R&R 33.) Plaintiff alleges that Dr. Schwartz and Mitchell are similar because they both attended Columbia University and dress stylishly — but Mitchell is a lawyer and Dr. Schwartz is a psychiatrist, and there are no other similarities between the two. (Id. 33-34.) Finally, Magistrate Judge Frances noted that the unnamed, unseen, and unheard documentary filmmaker is not actually a character on *Modern Family* and therefore cannot logically be substantially similar to Dr. Schwartz. (Id. 34.)

7. Additional Comparisons

      Plaintiff attempts to make several other character comparisons, which Magistrate Judge Francis describes as "untenable." (R&R 34.) Specifically, Magistrate Judge Francis found that the comparisons were between "uncopyrightable stock characters that appear in both works," all of which are not "sufficiently developed to be copyrightable." (Id. 34-35.) Plaintiff also claims that both works have characters with "funny Jewish names," specifically mentioning Plaintiff's Ben Figiwitz and *Modern Family*'s "Pepper Saltzman" and "Shell Turtlestein." Magistrate Judge Francis noted that "[i]t is not obvious why the name Figiwitz is funny, whereas both of the names featured in Modern Family are plainly designed to be humerous." (Id. 36.) Specifically, "Pepper Saltzman" is clearly a play on salt and pepper, and "Shell Turtlestein," the name of

Manny's *pet turtle* clearly refers to the poet Shel Silverstein, and not a reference to the turtle's religion (assuming that the turtle is, in fact, Jewish). (Id. 36-37.) Lastly, Magistrate Judge Francis rejected Plaintiff's claims that there is a substantial similarity between the works because both works include "sexually ambiguous" characters and Jewish characters. It is unclear whether there are any sexually ambiguous or Jewish characters in *Modern Family*. (Id. 37-38.) Magistrate Judge Francis was unclear on the definition of "sexually ambiguous" and also noted that the main characters on *Modern Family* celebrated Christmas. (Id.)

*C. Setting*

Plaintiff alleges that the works are substantially similar because both are based in Los Angeles, California and noted that few shows are set in Los Angeles. But, Magistrate Judge Francis found that "[t]he choice of Los Angeles as a setting is not in itself copyrightable, regardless of the number of television shows set there." (R&R 39 (citing Green v. Proctor & Gamble, Inc., 709 F. Supp. 418, 421 (S.D.N.Y. 1989)).)

*D. Format and Pace*

Plaintiff also argues that the works are substantially similar because both are "fast-paced situation comedies that utilize slapstick humor and feature large, ensemble casts." (R&R 40.) Magistrate Judge Francis rejected this contention, however because (1) *Modern Family* is significantly faster-paced than "Loony Ben"; (2) *Modern Family* uses a mock documentary format, whereas "Loony Ben" does not; and (3) "Loony Ben" focuses on one character — Ben, while *Modern Family* utilizes a true ensemble format. (Id. 40-42.)

Plaintiff argues that the mock documentary format of *Modern Family* bears resemblance to the therapy sessions between Ben and Dr. Schwartz in "Loony Ben," but Magistrate Judge

13

Francis found that these formats are not similar because there is an actual dialogue between Ben and Dr. Schwartz, while there is no back-and-forth dialogue in the documentary portions of *Modern Family*. (Id. 41.) Plaintiff argues that Ben speaks to the audience in "Loony Ben" — as the *Modern Family* characters frequently do — but this only happens in the pilot script once, in a completely different context, and with a completely different tone. (Id. 40-41.) In other words, there is no sense that "Loony Ben" is a mock documentary. (Id.) In addition, Magistrate Judge Francis found that the use of slapstick humor is not copyrightable. (Id.)

*E. Total Concept and Feel*

Plaintiff argues that the total concept and feel of the works are substantially similar because they both "depict a large, non-traditional, dysfunctional, contemporary American family that includes individuals of various races, ethnicities, sexual orientations, ages, and marital statuses." (R&R 42-43 (citing Am. Compl. ¶ 88-115).) Magistrate Judge Francis found, however, that the focus of "Loony Ben" is not on the family, but on Ben, while *Modern Family*, "spreads its attention between the various members of the featured family and presents themes that are broadly applicable to the family as a whole." (Id. 43-44.) As a result, Magistrate Judge Francis concluded that "a reasonable jury could not find that [the works] are substantially similar," and therefore recommends that the Court dismiss Plaintiff's copyright infringement claim. (Id. 44.)

## III. Additional Claims

*A. Contributory and Vicarious Copyright Infringement*

"A party may be liable for contributory copyright infringement if with knowledge of the infringing activity, the party induces, causes, or materially contributes to the infringing conduct of another." Centrifugal Force, Inc. v. Softnet Communication, Inc., No. 08 Civ. 5463, 2011 WL

14

744732, at *4 (S.D.N.Y. Mar. 1, 2011) (citation and internal quotation marks omitted). "A party

is liable for vicarious infringement if it had a right and ability to supervise that coalesced with an

obvious and direct financial interest in the exploitation of copyrighted materials." Agence France

Presse v. Morel, No. 10 Civ. 2730, 2011 WL 147718, at *7 (S.D.N.Y. Jan. 14, 2011) (citation

and internal quotation marks omitted). There cannot be a finding of contributory or vicarious

copyright infringement without a finding of direct infringement. Metro-Goldwyn-Mayer Studios

Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) (vicarious infringement); Faulkner v. National

Geographic Enterprises Inc., 409 F.3d 26, 40 (2d Cir. 2005) (contributory infringement).

Magistrate Judge Francis found that, since there was no direct infringement, Plaintiff has failed

to allege contributory and vicarious copyright infringement and, therefore, recommends that the

Court dismiss the claims. (R&R 45.)


*B. Idea Misappropriation*

Magistrate Judge Francis noted that he would typically recommend that the Court decline

supplemental jurisdiction over Plaintiff's state law claims, but noted that because Plaintiff has

pled diversity jurisdiction, he would address the claims on the merits. (R&R 45 n.7.)

"New York law recognizes the tort of misappropriation of ideas when a plaintiff's factual

assertions establish that her allegedly misappropriated ideas were 'novel' and 'concrete' and

where the plaintiff demonstrates that a legal relationship existed between the parties." Broughel

v. Battery Conservancy, No. 07 Civ. 7755, 2009 WL 928280, at *10 (S.D.N.Y. Mar. 30, 2009)

(citation and internal quotation marks omitted). As Magistrate Judge Francis noted, however, "a

claim for idea misappropriation is preempted where 'the facts alleged in the complaint make it

impossible to separate a claim of misappropriation of [the] idea from a claim of misappropriation

15

of the copyrightable literary work through which that idea was expressed." (R&R 46 (citing <u>Katz</u> <u>Dochrermann & Epstein, Inc. v. Home Box Office</u>, No. 97 Civ. 7763, 1999 WL 179603, at *4 (S.D.N.Y. Mar. 31, 1999)).) Because the idea giving rise to the misappropriation claim in this case was fully expressed in the Treatment, which was copyrighted in 2006, Magistrate Judge Francis found that Plaintiff's idea misappropriation claim is preempted. (<u>Id.</u> 46-47.) Although Plaintiff argues that Defendants had access to his ideas from other, non-copyrighted works, Magistrate Judge Francis rejected this notion because "[P]laintiff does not allege that these later works contained ideas that were not also contained in the Treatment." (<u>Id.</u> 47.) As a result, Magistrate Judge Francis recommends that the Court dismiss Plaintiff's idea misappropriation claim.

### C. Defamation

In order for a plaintiff to sustain a claim for libel or slander — the "twin torts" that constitute defamation — under New York law, that plaintiff must show that the libel or slander "designates the plaintiff in such a way as to let those who knew him understand that he was the person meant." <u>Stern v. News Corp.</u>, No. 08 Civ. 7624, 2010 WL 5158635, at *5 (S.D.N.Y. Oct. 14, 2010 (citation omitted) (regarding libel); <u>see</u> <u>Gristedes Foods, Inc. v. Poospatuck</u> <u>(Unkechauge) Nation</u>, No. 06 Civ. 1260, 2009 WL 4547792, at *14 (E.D.N.Y. Dec. 1, 2009 (regarding slander).

Plaintiff argues that he was defamed because the credits accompanying *Modern Family* state that Steven Levitan and Christopher Lloyd created *Modern Family*, and because Defendants allegedly made false and misleading statements suggesting that Levitan and Lloyd were the creators of *Modern Family*, rather than Plaintiff. (Am. Compl. ¶¶ 315-17, 312, 314.) None of

these statements identify Plaintiff "by name or implication" and, accordingly, Magistrate Judge

Francis recommends that the Court dismiss Plaintiff's defamation claim. (R&R 48-49.)

*D. Piercing the Corporate Veil*

Plaintiff's final claim seeks to pierce the corporate veil of the various named corporate

defendants. Because he recommends dismissing all of Plaintiff's substantive claims, Magistrate

Judge Francis recommends dismissing this claim as moot. (R&R 49.)

## PLAINTIFF'S OBJECTIONS

### I. Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely

objection has been made to the recommendations of the magistrate judge, the court is obligated

to review the contested issues *de novo*. Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998).

The Court, however, "may adopt those portions of the Report [and Recommendation] to which

no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F.

Supp. 2d 157, 159 (S.D.N.Y 2000).

### II. Plaintiff's Objections

A court should not dismiss a *pro se* complaint "for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10 (1980). In his objections, Plaintiff

primarily reiterates the arguments made in his memorandum of law in opposition to Defendants'

motion.  Plaintiff objects to the copyright law standard employed by Magistrate Judge Francis, and his application of the standard to the works.

Plaintiff's objections lack merit. The Court concludes that Magistrate Judge Francis's findings of fact are accurate, the legal analysis correct, and the recommendations sound and appropriate.

*A. Legal Standard*

In sum, Plaintiff argues that Magistrate Judge Francis misapplied the copyright law standard by using the "more discerning observer test," claiming that the the Court should not dissect the works at issue into separate components and take into account the copyrightability and non-copyrightability of those components. (Obj. 15.)  Magistrate Judge Francis, however, applied the correct copyright law standard. In Boisson v. Banian, Ltd, 273 F.3d 262 (2d Cir. 2001), cited by Plaintiff, the Second Circuit said that the more discerning observer test "is guided by comparing the 'total concept and feel' of the contested works." Id. at 272. Although Magistrate Judge Francis did break the works down into their constituent parts in order to proceed logically with his analysis, he eventually returned to the "total concept and feel" of the works in recommending that there was no substantial similarity between them. In sum, neither an ordinary observer nor a more discerning one would see any similarity between "Loony Ben" and *Modern Family* beyond the general idea of a sitcom focusing on a large extended family including many different kinds of people — elements which are neither copyrightable nor evidence of substantial similarity.

18

*B. Application*

Plaintiff argues that Magistrate Judge Francis improperly concentrated on individual differences between the corresponding characters in the works, objecting to the R&R's focus on "fragmented literal similarity." (Obj. 21.) But Magistrate Judge Francis's analysis clearly discussed not only the differences between the corresponding characters, but also the differences in their allegedly similar characteristics. For example, although Magistrate Judge Francis found that Ben and Phil are not substantially similar characters, he also noted that the specific characteristics, such as their alleged obsession with rock stars or attraction to blonde women were either non-copyrightable or not substantially similar. (R&R 25-26.) Another example: while Dr. Schwartz does not have a corresponding character in *Modern Family,* Magistrate Judge Francis still noted that Plaintiff's alleged similarities between Dr. Schwartz and Mitchell, Jay, and the documentary filmmaker were unavailing. (R&R 33.) In sum, Magistrate Judge Francis concluded that not only are the corresponding characters in the works not substantially similar, but the characteristics, taken together, do not create a substantial similarity between the works on the whole.

Plaintiff states that "one can infringe a copyright, not just by literally copying a portion of a work, but by parroting properties that become apparent only when numerous decisions embodied in a plaintiff's work are considered in relation to one another and the work as viewed as a whole." (Obj. 30.) In other words, Plaintiff argues that Magistrate Judge Francis simply looked at individual differences between the works without considering the works in their entirety.  But this interpretation of Magistrate Judge Francis's analysis is simply incorrect. Magistrate Judge Francis found, and this Court agrees, that no reasonable jury could find that the "total concept and feel" of *Modern Family* and "Loony Ben" are substantially similar. As a

19

result, Plaintiff has failed to state a viable claim for copyright infringement, or any other claim alleged in his Amended Complaint. Accordingly, Plaintiff's complaint must be dismissed.

## CONCLUSION

The Court has considered Plaintiff's additional objections and finds them to be without merit. Having considered Magistrate Judge Francis's R&R and the accompanying objections, Defendants' motion to dismiss is GRANTED. Accordingly, the case is dismissed with prejudice. The Clerk of Court is directed to enter judgment and close this case.

Dated:  New York, New York
        July 14, 2011

                                        SO ORDERED

                                        _____
                                        PAUL A. CROTTY
                                        United States District Judge

Copies Mailed To:

Martin Alexander
2506 S. Schenley Avenue
Youngstown, OH 44511

Joseph F. Richburg, Esq.
CBS Law Department
51 West 52nd Street
New York, NY 10019

Dale M. Cendall, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

20